## FRANCES J. DALIA *v.* JULIA LAWRENCE ET AL.
### (14501)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued January 8—decision released June 22, 1993

*Melissa A. Buckley,* for the appellant (plaintiff).

*Max F. Brunswick,* with whom were *Matthew E. Naclerio* and *Robert C. Ruggiero,* for the appellees (defendants).

BORDEN, J. The principal issue in this appeal is whether valid trust savings accounts, established by a decedent pursuant to General Statutes § 36-110 (a),[1]

---

[1] General Statutes § 36-110 provides: "DEPOSITS IN TRUST. (a) (1) No savings bank, state bank and trust company, savings and loan association or national banking association shall accept any deposit made by one person in trust for another unless the same is accompanied by a statement signed by the depositor giving the name and residence of the beneficiary. Such statement may also specify the terms of the trust thereby created. Unless such statement specifies to the contrary, it shall be conclusively presumed that the depositor intends to create a trust of the moneys at any time standing to the credit of such account upon the following terms: (A) The depositor during his life may withdraw, or authorize charges against, the moneys to the credit of the trust; (B) if the depositor survives the named beneficiary, the named beneficiary's death shall terminate the trust and title to the moneys to the credit of the trust shall vest in the depositor free and clear of the trust; (C) if the named beneficiary survives the depositor, the depositor's death shall terminate the trust and the moneys to the credit of the trust shall vest in the named beneficiary free and clear of the trust. (2) Any savings bank, state bank and trust company, savings and loan association or national banking association shall be fully protected in making payment of the moneys to the credit of such account in accordance with the terms of such signed statement or, in the event such statement does not specify to the contrary, in accordance with such of the presumptions contained in this subsection as may be applicable, and the title of any person to the moneys to the credit of such account and the effect of such signed statement with respect thereto or, in the event such statement does not specify to the contrary, the effect of such of the presumptions contained in this subsection shall not be denied, abridged or in any way affected because such signed statement was not executed in accordance with, or otherwise fails to comply with, the laws of this state prescribing the requirements to effect a valid testamentary disposition of property or because of any absence of delivery or compliance with other requirements to effect a valid gift or transfer in trust. (3) The provisions of this subsection shall not apply to the deposits accompanied by a statement of the type described in subsection (b) of this section.

"(b) In the case of a deposit made or maintained in a savings bank, state bank and trust company, savings and loan association or national banking association by a trustee under a will or other written instrument, or by

must be included in the statutory intestate share of the
surviving spouse of the decedent pursuant to General
Statutes (Rev. to 1989) § 45-273a (b).[2] The plaintiff,

a trustee pursuant to statute or order of a court, such deposit shall be accompanied by a statement signed by the trustee identifying such will, other written instrument, statute or order; and the moneys to the credit of an account with respect to which the trustee has filed such a statement shall be paid only to or upon the order of such trustee or of the successor trustee. If the trustee is serving in such capacity under a will or other written instrument, a certified copy of the instrument shall be filed by the depositor if at any time requested by such bank or association, but such bank or association shall not be charged with notice, actual or constructive, of the contents of such will or other instrument. Such bank or association shall be fully protected in paying over the moneys to the credit of such account to or upon the order of the trustee making or maintaining the deposit or the successor trustee and shall be under no duty to inquire into the application of funds so paid.

"(c) Subsection (a) shall apply to all deposits governed by its provisions made (1) on or after June 13, 1963, and (2) prior to said date if the depositor when making such deposit or at any time thereafter executed or executes a written statement as provided for in subsection (a). Subsection (b) shall apply to all deposits governed by its provisions whether such deposits have been made prior to June 13, 1963, or are made thereafter."

We rely in this opinion on the present language of § 36-110 because the variations in language due to amendments by Public Acts are immaterial for our purposes.

[2] General Statutes (Rev. to 1989) § 45-273a provided in relevant part: "SUCCESSION UPON DEATH OF SPOUSE. ELECTION AGAINST WILL. INTESTATE SUCCESSION. (a) On the death of a husband or wife, the survivor shall be entitled to the use for life of one-third in value of all the property, real and personal, legally or equitably owned by the other at the time of his or her death, after the payment of all debts and charges against the estate. Such third shall be set out by the fiduciary charged with the administration of the estate or, in the discretion of the probate court on its own motion or upon application by any interested person, by distributors appointed by the court of probate in any property, real or personal or both, according to the judgment of such fiduciary or distributors. The right to such third shall not be defeated by any disposition of the property by will to other properties. If the husband has by will devised or bequeathed a portion of his property to his surviving wife, or if the wife by will has devised or bequeathed a portion of her property to her surviving husband, such provision shall be taken to be in lieu of the share hereinabove provided for, unless the contrary is expressly stated in the will or clearly appears therein; but, in any such case, the surviving spouse, or the conservator or guardian of the estate of the surviving spouse, with the approval, after public notice and hear-

Frances J. Dalia, the widow of Thomas Dalia (decedent) and the administratrix of his estate, appeals from

ing, of the court of probate by which such conservator or guardian was appointed, shall have his or her election whether to accept the provision of such will or take such life use of one-third. Such election shall be made in writing signed by the party entitled to make the election and lodged with the court of probate before which estate is in settlement . . . . If such election is not so made, such person shall be taken to have accepted the provisions of the will and shall be barred of such statutory share. In any case where the husband or wife by will does not make any provision for the surviving wife or husband, the surviving spouse, or the conservator or guardian of the estate of the surviving spouse, with the approval, after public notice and hearing, of the court of probate by which such conservator or guardian was appointed, shall . . . file a notice, in writing, of his or her intention to take a life use of one-third of the estate under the provisions of this section with the court of probate before which the estate is in settlement, and if such notice was not so filed, such person shall be barred of such statutory share. A surviving spouse shall also, when in the opinion of the court of probate it is necessary, be allowed a reasonable sum from the estate for his or her support and for the support of his or her family during the settlement of the estate; but, in that case, such person shall not take his or her statutory share until the expiration of the time for which such allowance is made. The provisions of this section with regard to the statutory share of the surviving husband or wife in the property of the other shall not apply to any case in which, by written contract made before or after marriage, either party has received from the other what was intended as a provision in lieu of such statutory share; nor shall either party be entitled to such statutory share who, without sufficient cause, abandoned the other and continued such abandonment to the time of the other's death.

"(b) If there is no will, or if any part of the property, real and personal, legally or equitably owned by the deceased at the time of his or her death, is not effectively disposed of by the will or codicil of the deceased, the portion of the intestate estate of the deceased which the surviving husband or wife of the deceased shall take is: (1) If there is no surviving issue or parent of the deceased, the entire intestate estate absolutely; (2) if there is no surviving issue of the deceased but the deceased is survived by a parent or parents, the first one hundred thousand dollars plus three-quarters of the balance of the intestate estate absolutely; (3) if there are surviving issue of the deceased all of whom are also issue of the surviving spouse, the first one hundred thousand dollars plus one-half of the balance of the intestate estate absolutely; or (4) if there are surviving issue of the deceased one or more of whom are not issue of the surviving spouse, one-half of the intestate estate absolutely.

"(c) The provisions of this section shall apply to estates of all persons dying on or after July 1, 1985.

"(d) For the purposes of this section issue shall include children born out

the judgment of the trial court,[3] rendered after a court trial, determining that title to certain personal and real property is in the defendants, Julia Lawrence, Carmen Dalia and Paul Dalia, the children of the decedent by a prior marriage. The plaintiff claims that the trial court improperly concluded that: (1) two trust savings accounts established by the decedent during his life were not part of the plaintiff's intestate share; (2) the transfer of certain real estate by the decedent during his life was a valid inter vivos gift; and (3) a certain survivorship bank account established by the decedent during his life was a valid inter vivos gift. We affirm the judgment of the trial court.

The plaintiff, acting both individually and as the administratrix of the decedent's estate, brought this action against the defendants, claiming that: (1) as the administratrix of the decedent's estate, she was entitled to immediate possession of certain bank accounts and real property in the defendants' possession; and (2) as the widow of the decedent, she was entitled to her intestate share of those accounts and real property. The trial court rendered judgment for the defendants. This appeal followed.

The trial court found the following facts: The plaintiff and the decedent married on September 1, 1967. After their wedding, the plaintiff and the decedent resided in a two-family house owned by the decedent in New Haven. On May 3, 1968, the decedent executed a quitclaim deed of the house to the three defendants.

---

of wedlock and the issue of such children who qualify for inheritance under the provisions of section 45-274."

In 1990, § 45-273a was recodified at General Statutes §§ 45a-436 and 45a-437. See footnote 5.

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

After the deed was recorded on the New Haven land records on May 7, 1968, it was mailed to the defendant Julia Lawrence.

The trial court further found that, after the defendants had become the owners of the house by virtue of the deed, they gave the decedent permission to continue to use and occupy the premises for the duration of his life, as if he were still the fee owner. Although from May 3, 1968, through November 21, 1989, when the decedent died, the insurance policy covering the house named the defendants as the owners of the premises, the decedent continued to bear all the expenses of the house, including taxes, insurance, sewer charges, repairs and mortgage payments. The decedent also continued to collect all the rental income generated by the property, entered into leases with tenants, and responded to the tenants' complaints and needs. The decedent reported all the income on his and the plaintiff's joint income tax returns, and took the available depreciation and expense deductions. On various occasions, the decedent stated to his accountant, his neighbors and the municipal authorities that he was the owner of the property. The decedent told his children that it was his intention that they have the property, in accordance with his promise to their mother.

The trial court specifically found that the defendants had proven, by clear and convincing evidence, that the decedent had intended to pass title immediately and irrevocably to the defendants, and that the recording of the deed, coupled with that intent, constituted an immediate legal delivery to the defendants. The court also specifically stated that this finding was not contravened by the fact that the decedent had continued to control the property, with the defendants' consent, during his lifetime.

The trial court also found that the decedent had opened two trust savings accounts: (1) an account with the Second Bank of New Haven, now the Bank of Boston, in his name as trustee for Carmen Dalia; and (2) an account with the Colonial Bank, also now the Bank of Boston, in the name of the decedent as trustee for Julia Lawrence.[4] With respect to both accounts, the decedent was the sole signatory, the accounts were listed under his social security number, and he continued to exercise complete control over the accounts and the funds in them. Under the rules of the banks, only the decedent was allowed access to the accounts during his life, and upon his death the funds would be payable to the named beneficiaries. The passbooks to these accounts were kept either in the decedent's house or in a safety deposit box located at one of the banks. The trial court found that, until he was near death, the decedent had been the only person who had opened the safety deposit box.

The decedent also opened a joint survivorship savings account with the Bank of Boston, in his name and that of Paul Dalia. This account was listed under the decedent's social security number, and until November 13, 1989, he exercised complete control over the account and the funds in it. Under the rules of the bank, both the decedent and Paul Dalia had access to this account while both were alive. The passbook was kept either in the decedent's house or in the safety deposit box mentioned above.

The trial court also found that on November 13, 1989, as the decedent was dying, he gave Paul Dalia the keys to the safety deposit box and told him: (1) to close out the joint survivorship account and use the funds,

---

[4] The trial court did not find, and the record does not disclose, whether the decedent opened the trust savings accounts or a joint survivorship account before or after his marriage to the plaintiff.

amounting to approximately $17,000, to pay for the decedent's burial and to buy a truck for himself; and (2) to hold the trust savings account passbooks for Julia Lawrence and Carmen Dalia. The trial court found that the decedent had delivered the joint survivorship account passbook to Paul Dalia with the authority to use the money in the account.

With respect to all the bank accounts, the trial court also found that the decedent had told the defendants that it was his intention that they have the money in the accounts, in accordance with his promise to the defendants' mother. With respect to the joint account, the court found that the plaintiff had failed to rebut the statutory presumption created by General Statutes § 36-3 that the decedent had intended to pass to Paul Dalia a present beneficial ownership interest in the account when the decedent opened the account.

On November 21, 1989, the decedent died intestate. On November 28, 1989, the bank paid Julia Lawrence the funds in the trust account for her, in the amount of approximately $14,000, and on November 29, 1989, the bank paid Carmen Dalia the funds in the trust account for her, in the amount of approximately $17,000. The defendants filed a state succession tax return conceding their tax liability for the full value of the real property and of the funds in the bank accounts. The department of revenue services assessed the defendants accordingly.

I

The plaintiff first claims that the trial court improperly concluded that the trust savings accounts were not part of the decedent's intestate estate for purposes of determining the plaintiff's intestate share. We disagree.

Some brief history is in order. In *Fasano* v. *Meliso,* 146 Conn. 496, 152 A.2d 512 (1959), this court held that a trust account, similar to the accounts in the present case, was invalid as "an attempted testamentary disposition of the trustee's own property in a manner forbidden by the Statute of Wills." Id., 499. In response, "the 1961 General Assembly enacted Public Act No. 306 in order to overrule the consequence of that decision and to give full effect to a savings account trust deposit despite the requirements of the Statute of Wills." *Manulik* v. *Devitt,* 176 Conn. 663, 667, 410 A.2d 469 (1979). Number 306 of the 1961 Public Acts is now codified at General Statutes § 36-110 (a).

In *Manulik* v. *Devitt,* supra, we concluded that a trust savings account that had been established by a mother as trustee for her daughter, the defendant in the case, was valid. After the mother's death, the plaintiffs, who were the defendant's brothers, contended that their mother had intended that the money in the account be divided equally among her children upon her death. Id., 665. We held, however, that § 36-110 (a) established "a conclusive presumption" that the depositor had intended to create a trust upon the terms stated in the statute; see footnote 1; and specifically that "the effect of the foregoing [presumption] 'shall not be denied, abridged or in any way affected because such signed statement . . . fails to comply with . . . the laws of this state prescribing the requirements to effect a valid testamentary disposition of property or because of any absence of delivery or compliance with other requirements to effect a valid gift or transfer in trust.' [General Statutes § 36-110 (a) (2).]" Id., 667.

In *Manulik,* moreover, we rejected the plaintiffs' argument that § 36-110 had been enacted solely for the protection of banks and that, therefore, the ownership of the trust account should be determined in accordance with the settlor's intent and "common-law prereq-

uisites for the establishment of a valid trust." Id., 668. We stated: "General Statutes § 36-110, as amended, attaches specific consequences to the acts of the depositor-trustee when compliance with the statute is satisfied. It is unmistakable that the statute was based upon the premise that the creation and maintenance of such an account itself manifested the depositor-trustee's intent and that this conclusively presumed intent should be accorded full effect through the instrumentality of a 'statutory trust' in spite of the fact that the transaction fails to satisfy the requirements of the Statute of Wills or of the common-law concepts of gifts or transfers in trusts. Cf. *Howard Savings Institution* v. *Kielb,* 38 N.J. 186, 202, 183 A.2d 401 [1962] (construing a statute virtually identical with § 36-110). In sum, § 36-110 gives effect to the intention of the depositor to make a 'poor man's will,' but at the same time to retain the sole right to the moneys during his lifetime. See Hearings, Joint Standing Committee on Banks, 1961 Session, pp. 129–132. By virtue of the statute's conclusive presumption regarding the depositor-trustee's intent, therefore, the defendant in the present case, as beneficiary, acquired all rights to the funds contained in the account upon the death of her mother." *Manulik* v. *Devitt,* supra.

In *Salvio* v. *Salvio,* 186 Conn. 311, 441 A.2d 190 (1982), we considered the effect of § 36-110 (a) in the context of a marital dissolution action. At issue in that case was "whether savings accounts held by one or both parties in trust for their children may be included by the trial court in its division of marital property accompanying the parents' [marital dissolution]." Id., 312. We held that the accounts could be included by the trial court in its division of marital property because § 36-110 (a) provides that the beneficiary of a savings account trust acquires no legal interest in the funds on deposit until the trustee's death. Id., 322–24.

Furthermore, we noted in *Salvio* that such funds may be reached by the depositor's creditors during the depositor's lifetime, and by the depositor's creditors after the depositor's death if the depositor dies insolvent. Id., 320. Similarly, the depositor remains liable for the income tax on the interest earned by the funds, and the depositor's estate is liable for the federal estate and state succession taxes. Id.

In *Salvio*, we adverted to the fact that "[a]lthough there is no . . . consensus on the right of a spouse to reach funds deposited in savings account trusts when computing an elective share of the depositor's estate, the prevailing view is that, since the decedent spouse exercised such complete power over the funds during his lifetime, the surviving spouse should be permitted to include them." Id., 321. Noting, however, that New York had by statute included trust savings accounts in the decedent spouse's estate, we also stated: "The issue has not yet been squarely addressed in Connecticut, although it is clear that 'neither husband nor wife acquires, by virtue of the marriage, any interest in the real or personal property of the other during that other's lifetime,' and 'either spouse may, in his lifetime, without the consent or knowledge of the other, make a valid gift or otherwise dispose of his property, to a third party.' *Cherniack* v. *Home National Bank & Trust Co.*, 151 Conn. 367, 370, 198 A.2d 58 (1964); see *Hodge* v. *Hodge*, 178 Conn. 308, 314, 422 A.2d 280 (1979); Clark, 'The Recapture of Testamentary Substitutes to Preserve the Spouse's Elective Share: An Appraisal of Recent Statutory Reforms,' 2 Conn. L. Rev. 513, 522 (1970)." *Salvio* v. *Salvio*, supra, 321 n.8.

This case, therefore, squarely presents the issue to which the court in *Salvio* referred but that it did not decide. The plaintiff argues that Connecticut has a strong public policy, reflected in General Statutes (Rev.

to 1989) § 45-273a, now recodified at General Statutes
§§ 45a-436 and 45a-437,[5] against permitting a husband

---

[5] General Statutes § 45a-436 provides: "(Formerly Sec. 45-273a). SUC-
CESSION UPON DEATH OF SPOUSE. STATUTORY SHARE. (a) On the death of
a spouse, the surviving spouse may elect, as provided in subsection (c) of
this section, to take a statutory share of the real and personal property
passing under the will of the deceased spouse. The 'statutory share' means
a life estate of one-third in value of all the property passing under the will,
real and personal, legally or equitably owned by the deceased spouse at
the time of his or her death, after the payment of all debts and charges
against the estate. The right to such third shall not be defeated by any dis-
position of the property by will to other parties.

"(b) If the deceased spouse has by will devised or bequeathed a portion
of his or her property to his or her surviving spouse, such provision shall
be taken to be in lieu of the statutory share unless the contrary is expressly
stated in the will or clearly appears therein; but, in any such case, the sur-
viving spouse may elect to take the statutory share in lieu of the provision
of the will.

"(c) The surviving spouse, or the conservator or guardian of the estate
of the surviving spouse, with the approval, after public notice and hear-
ing, of the court of probate by which such conservator or guardian was
appointed, shall, not later than one hundred fifty days from the date of
the appointment of the first fiduciary, as defined in section 45a-353, file
a notice, in writing, of his or her intention to take the statutory share with
the court of probate before which the estate is in settlement, and if such
notice is not so filed, the surviving spouse shall be barred of such statutory
share.

"(d) If the court of probate has allowed a support allowance under sec-
tion 45a-320 from the deceased spouse's estate for support of the surviv-
ing spouse and for the support of his or her family, the surviving spouse
shall not take his or her statutory share until the expiration of the time
for which the support allowance is made.

"(e) The statutory share shall be set out by the fiduciary charged with
the administration of the estate or, in the discretion of the probate court
on its own motion or on application by any interested person, by distribu-
tors appointed by the court of probate. The statutory share may consist
of personal property or real property, or both, according to the judgment
of the fiduciary or distributors.

"(f) The provisions of this section with regard to the statutory share of
the surviving spouse in the property of the deceased spouse shall not apply
to any case in which, by written contract made before or after marriage,
either party has received from the other what was intended as a provision
in lieu of the statutory share.

"(g) A surviving husband or wife shall not be entitled to a statutory share,
as provided in subsection (a) of this section, or an intestate share, as pro-

to leave his widow destitute.[6] Relying for specific
authority on comment (e) of § 58 of the Restatement
(Second) of Trusts (1959),[7] on the position taken by

vided in section 45a-437, in the property of the other if such surviving spouse,
without sufficient cause, abandoned the other and continued such aban-
donment to the time of the other's death.

"(h) The provisions of this section shall apply to estates of all persons
dying on or after July 1, 1985."

General Statutes § 45a-437 provides: "INTESTATE SUCCESSION. DISTRI-
BUTION TO SPOUSE. (a) If there is no will, or if any part of the property,
real or personal, legally or equitably owned by the decedent at the time
of his or her death, is not effectively disposed of by the will or codicil of
the decedent, the portion of the intestate estate of the decedent, determined
after payment of any support allowance from principal pursuant to sec-
tion 45a-320, which the surviving spouse shall take is:

"(1) If there is no surviving issue or parent of the decedent, the entire
intestate estate absolutely;

"(2) If there is no surviving issue of the decedent but the decedent is sur-
vived by a parent or parents, the first one hundred thousand dollars plus
three-quarters of the balance of the intestate estate absolutely;

"(3) If there are surviving issue of the decedent all of whom are also issue
of the surviving spouse, the first one hundred thousand dollars plus one-
half of the balance of the intestate estate absolutely;

"(4) If there are surviving issue of the decedent one or more of whom
are not issue of the surviving spouse, one-half of the intestate estate abso-
lutely.

"(b) For the purposes of this section issue shall include children born out
of wedlock and the issue of such children who qualify for inheritance under
the provisions of section 45a-438."

[6] The parties are at odds over whether the plaintiff in this case was in
fact left destitute at the decedent's death. The defendants claim that there
is no evidence in the record to support such a determination. The plaintiff
responds that there is such evidence. We need not resolve this dispute. First,
the trial court made no such finding, and, as far as we can discern, was
not asked to do so. More importantly, our interpretation of General Stat-
utes § 36-110 (a) is not predicated on the fact-specific financial circumstances
of the individual claimant.

[7] Section 58 of the Restatement (Second) of Torts (1959) provides, with
respect to such a trust savings account, that "the intended trust is enforce-
able by the beneficiary upon the death of the depositor . . . ." Comment
(e), entitled "Restrictions on testamentary disposition," qualifies this state-
ment as follows: "Although the surviving spouse in claiming his or her statu-
tory distributive share of the estate of the decedent is not entitled to include
in the estate property transferred during his lifetime by the decedent in
trust for himself for life with remainder to others, even though the dece-

Professors Scott and Fratcher,[8] and on what she claims is the pervasive trend in other jurisdictions,[9] the plaintiff contends that the surviving spouse should, for purposes of §§ 36-110 (a) and 45-273a (b), be treated like a creditor of the decedent and like the spouse in the marital dissolution context, rather than like the sibling of the beneficiary of the trust savings account. We are not persuaded.

dent reserves a power of revocation (see § 57, Comment *c*), the surviving spouse of a person who makes a savings deposit upon a tentative trust can include the deposit in computing the share to which the surviving spouse is entitled."

[8] Professors Scott and Fratcher argue that, because the depositor reserves complete control over the account during his life, "even though the trust is valid as against the personal representative of the depositor, it should not be valid as against the surviving spouse." 1A A. Scott & W. Fratcher, Trusts (4th Ed. 1987) § 58.5, p. 232.

[9] The plaintiff relies on: *Montgomery* v. *Michaels,* 54 Ill. 2d 532, 301 N.E.2d 465 (1973); *Whittington* v. *Whittington,* 205 Md. 1, 106 A.2d 72 (1954); *Mushaw* v. *Mushaw,* 183 Md. 511, 39 A.2d 465 (1944); *Sturgis* v. *Citizens National Bank,* 152 Md. 654, 137 A. 378 (1927); *In re Estate of Jeruzal,* 269 Minn. 183, 130 N.W.2d 473 (1964); and *Krasney Estate,* 7 Fid. Rptr. 403 (Pa. App. 1957).

Our research indicates that, although, numerically, there are more courts that have included such trusts in the surviving spouse's statutory elective or intestate share than to the contrary, the results are varied enough to preclude characterizing these cases as a "pervasive trend." See, e.g., *Allen* v. *First Presbyterian Church,* 12 Cal. App. 4th 1762, 16 Cal. Rptr. 2d 352 (1993) (deposits in Totten trust not included in surviving spouse's statutory share); *Castellano* v. *Cosgrove,* 280 So. 2d 676 (Fla. 1973) (surviving spouse not entitled to share in Totten trusts absent evidence that such accounts were illusory or an attempt to defraud that spouse); *Montgomery* v. *Michaels,* supra (statutory share includes funds in Totten trusts because such trusts, while otherwise valid, are invalid against surviving spouse); *Klosiewski* v. *Slovan Building & Loan Assn.,* 247 Md. 82, 230 A.2d 285 (1967) (statutory share does not include funds in Totten trust absent evidence that creation of trust was intended to defraud surviving spouse); *In re Estate of Jeruzal,* supra (affirming trial court's denial of surviving spouse's petition to include Totten trust in the statutory share, but expressing intent to apply Restatement rule in the future); *Kaminsky* v. *Smith,* 40 App. Div. 2d 522, 334 N.Y.S.2d 544 (1972) (statute specifically included funds in Totten trust as part of statutory share); *In re Estate of Iafolla,* 380 Pa. 391, 110 A.2d 380 (1955) (construing statute to require inclusion of Totten trust in surviving spouse's statutory share).

We first note that most of the authorities that include such trust accounts in the decedent's estate, including the dissent in this case, do so on the basis of an unstated premise: that the issue should be decided, not by interpretation of the applicable statutory provisions, but rather as a matter of policy in light of general common law and equitable principles. See, e.g., *Montgomery* v. *Michaels*, 54 Ill. 2d 532, 301 N.E.2d 465 (1973); *Klosiewski* v. *Slovan Building & Loan Assn.*, 247 Md. 82, 230 A.2d 285 (1967); *In re Estate of Jeruzal*, 269 Minn. 183, 130 N.W.2d 473 (1964). We do not share that premise. In our view, whether a surviving spouse may treat such a trust as part of his or her intestate share is a question of statutory interpretation: whether such property is within the meaning of the phrase, "the intestate estate of the deceased," as used in § 45-273a (b). That statute is the sole source of, and provides the sole measurement of, the surviving spouse's right to inherit from the decedent. In order for the plaintiff to prevail on this claim, therefore, she must establish that the funds in the trust savings accounts are part of the decedent's "intestate estate" under that statute.

We do not believe that they are. Reading § 36-110 (a) and § 45-273a (b) together, as we must, we conclude that the legislature did not intend that valid trust savings accounts, established pursuant to § 36-110 (a), be considered part of a decedent's intestate estate for purposes of determining the surviving spouse's share of that estate under § 45-273a (b).

First, both the language of § 36-110 (a) and our interpretation of it in *Manulik* v. *Devilt*, supra, strongly suggest that such accounts pass according to their terms and according to the terms of § 36-110 (a), and that no exception was intended by the legislature for surviving spouses. The language of § 36-110 (a) is particularly definite. Unless the depositor has stated to the con-

trary, "it shall be conclusively presumed that the depositor intends to create a trust . . . upon the following terms . . . (C) if the named beneficiary survives the depositor, the depositor's death shall terminate the trust and the moneys to the credit of the trust shall vest in the named beneficiary free and clear of the trust. . . ." General Statutes § 36-110 (a) (1). Furthermore, "the title of [the named beneficiary] to the moneys to the credit of such account and . . . the effect of . . . the presumptions contained in this subsection shall not be denied, abridged or in any way affected because such signed statement [of the depositor establishing the account] was not executed in accordance with, or otherwise fails to comply with, the laws of this state prescribing the requirements to effect a valid testamentary disposition of property or because of any absence of delivery or compliance with other requirements to effect a valid gift or transfer in trust." General Statutes § 36-110 (a) (2). We perceive no implied exception in this language, vesting title to the funds in a trust account in the named beneficiary, for cases in which the named beneficiary is someone other than the surviving spouse of an intestate decedent.

This conclusion is consistent with our construction of § 36-110 (a) in *Manulik* v. *Devitt,* supra. Although concededly we were not faced with a challenge mounted by a surviving spouse, in that case we read § 36-110 (a) as intended "to give *full effect to a savings account trust* deposit despite the requirements of the Statute of Wills." (Emphasis added.) Id., 667. We also stated that the statute was intended to attach "specific consequences" to the creation of such a trust, and that such creation manifested the "conclusively presumed intent" of the settlor, which should "be accorded full effect through the instrumentality of a 'statutory trust' . . . ." Id., 668. By transporting the proceeds of the trusts in this case into the decedent's intestate estate

for purposes of the plaintiff's share thereof, we would not be giving "full effect" to the trusts, and would be contradicting the decedent's statutorily "conclusively presumed intent" that the proceeds go to the defendants. Id.

Furthermore, if a decedent were to die intestate but were not survived by a spouse, the fiduciary of the intestate estate could not successfully require the named beneficiary of a § 36-110 (a) trust to disgorge its proceeds on the ground that they were properly part of the decedent's "intestate estate" under § 45-273a. The plaintiff, however, would in effect have us interpret the phrase "intestate estate" in § 45-273a to include the proceeds of such a trust depending on the identity of the claimant thereto: if the claimant is the surviving spouse, the phrase includes such a trust; if the claimant is anyone other than the surviving spouse, the phrase does not include such a trust. In the absence of clear legislative direction to do so, we decline to give different meanings to the same phrase in the same statute depending on the identity of the party claiming entitlement to the property described by such phrase. See *Red Rooster Construction Co.* v. *River Associates, Inc.,* 224 Conn. 563, 571, 620 A.2d 118 (1993); *In re Valerie D.,* 223 Conn. 492, 517, 613 A.2d 748 (1992).

Moreover, in *Cherniack* v. *Home National Bank & Trust Co.,* 151 Conn. 367, 368, 198 A.2d 58 (1964), the testator, without his wife's knowledge, had transferred the bulk of his estate to an inter vivos trust, reserving to himself the net income for his life and the powers of revocation and amendment, and providing for the trust assets to pass to his brothers upon his death. This court held that: (1) the trust was not invalid as an attempted testamentary disposition; id., 370; and (2) the transfer could not be set aside as fraudulent as to his widow because she "had no right or interest in the property of the decedent during his lifetime." Id.,

371; see also *Stewart* v. *Stewart*, 5 Conn. 316 (1824) (decedent executed deed in trust of all his real estate, to be delivered to his children upon his death; held not fraudulent as to decedent's widow's right of dower in decedent's real estate). Commentators have acknowledged other legal arrangements by which a Connecticut decedent may validly avoid his or her surviving spouse's intestate share.[10]

The ready availability of these alternative arrangements further supports our conclusion that § 45-273a does not include a § 36-110 (a) savings account. Because a financially sophisticated decedent would have been able to take advantage of these arrangements with a minimum of loss of control and inconvenience, there is little reason to believe that the legislature intended § 45-273a to prevent the same ends from being accomplished by the less sophisticated means of such a trust account. Indeed, although in *Manulik* v. *Devitt*, supra, 668, we stated that "§ 36-110 gives effect to the intention of the depositor to make a 'poor man's will,' " it is probably more accurate to describe such an account as an "unsophisticated person's revocable trust." See *Cherniack* v. *Home National Bank & Trust Co.*, supra.

Finally, our conclusion is buttressed by reference to §§ 45a-436 and 45a-437. See footnote 5. Whereas § 45-273a covered a surviving spouse's elective share in lieu of that given by a will under subsection (a) and

---

[10] See M. Wenig, "The Marital Property Law of Connecticut: Past, Present and Future," 1990 Wis. L. Rev. 807, 855 (suggesting such arrangements as an "inter vivos trust with reserved life estate and power of appointment; revocable inter vivos trust; life insurance; refund annuity; revocable or irrevocable joint and survivorship holdings; IRAs and nonqualified retirement plans; pay-on-death U.S. bonds and other P.O.D. contractual benefits; and even a deed deliverable to grantee on death of grantor"); E. Clark, "The Recapture of Testamentary Substitutes to Preserve the Spouse's Elective Share: An Appraisal of Recent Statutory Reforms," 2 Conn. L. Rev. 513, 531 (1970) (suggesting insurance, annuities, pensions, United States bonds payable to children on parent's death, or various trust arrangements).

a surviving spouse's intestate share under subsection (b), in 1990 the legislature, as part of a technical, non-substantive recodification of title 45, enacted Public Acts 1990, No. 90-146. Sections 9 and 10 of that public act recodified § 45-273a by separating out the surviving spouse's elective share into what is now § 45a-436, and the surviving spouse's intestate share into what is now § 45a-437.

Of particular significance is § 45a-436 (a), which provides in pertinent part that the "surviving spouse may elect . . . to take a statutory share of the real and personal property *passing under the will* of the deceased spouse. The 'statutory share' means a life estate of one-third in value of all the property *passing under the will*, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death . . . ." (Emphasis added.) The emphasized language, which was not present in § 45-273a, was added by the 1990 recodification.

The legislative history, however, makes unmistakably clear that this recodification was nonsubstantive in nature, and that any changes in language were intended solely for the purposes of clarifying the pre-existing meaning. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1990 Sess., pp. 417, 501, 545, 617–18, 681. Thus, we must regard that language as retroactively clarifying the meaning of § 45-273a (a). See *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 393, 618 A.2d 1340 (1993); *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 345–47, 612 A.2d 1203 (1992).

It is evident, therefore, that a surviving spouse's elective share in lieu of what he or she would take under a will does not include the proceeds of a § 36-110 (a) account, because those proceeds cannot be regarded as "passing under the will" within the meaning of

§ 45a-436 (a). General Statutes § 45a-437 (a), regarding the surviving spouse's intestate share, retained the parallel language—"any part of the property, real or personal, legally or equitably owned by the decedent at the time of his or her death"—that defined the decedent's "intestate estate" under § 45-273a (b). That same parallel language defines the decedent's testate estate under § 45a-436 (a). This recodification strongly suggests, therefore, that the phrase, "intestate estate," as used in General Statutes (Rev. to 1989) § 45-273a and General Statutes § 45a-437 (a), refers to property owned by the decedent in such form that it would, if willed, pass under such will. This would exclude the proceeds of a § 36-110 (a) savings account.

## II

The plaintiff's second claim challenges the trial court's findings regarding the transfer of the real property. The plaintiff claims that the transfer was not a valid inter vivos gift to the defendants because: (1) there was no conveyance of a present interest; and (2) the findings were not in accord with the substantial weight of the evidence and ignored the relevant evidence of the decedent's intent. The plaintiff argues that "[i]t is clear [the decedent's] intent was neither to part with control of the property nor to pass title immediately and irrevocably to the [defendants]. It is likewise clear that the conveyance was made to become operative and create interests in the [defendants] only upon [the decedent's] death." This claim fails.

"When an estate is a party, the burden is on the person claiming the gift to prove the claim by clear and satisfactory proof. *Kukanskis* v. *Jasut,* 169 Conn. 29, 32, 362 A.2d 898 (1975). The question of whether a gift inter vivos or causa mortis has been made is within the exclusive province of the court. Id., 32–33; *Bell* v. *Bloom,* 146 Conn. 307, 311, 150 A.2d 300 (1959);

*Hartford-Connecticut Trust Co.* v. *Slater,* 114 Conn. 603, 612, 159 A. 578 (1932). The determination of whether a gift has been made is not reviewable unless the conclusion of the court is one which cannot reasonably be made. *Kriedel* v. *Krampitz,* 137 Conn. 532, 534, 79 A.2d 181 (1951). The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact. *Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981); *Chazen* v. *New Britain,* 148 Conn. 349, 352, 170 A.2d 891 (1961). This court does not try issues of fact or pass upon the credibility of witnesses. *Soneco Service, Inc.* v. *Bella Construction Co.,* 175 Conn. 299, 300, 397 A.2d 1364 (1978)." *Long* v. *Schull,* 184 Conn. 252, 255, 439 A.2d 975 (1981). With respect to a gift of real property, the fact that the donor retains control of the property after recording and delivering the deed does not necessarily defeat an otherwise valid gift. See *Moore* v. *Giles,* 49 Conn. 570 (1882); *Stewart* v. *Stewart,* supra.

"A finding of fact is clearly erroneous when there is no evidence in the record to support it; *Web Press Services Corporation* v. *New London Motors, Inc.,* 205 Conn. 479, 483, 533 A.2d 1211 (1987); or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985), quoting *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. *Rostain* v. *Rostain,* 214 Conn. 713, 716, 573 A.2d 710 (1990)." (Internal quotation marks omitted.) *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.,* 218 Conn. 703, 708, 590 A.2d 968 (1991); *State Medical Society* v. *Commis-*

*sion on Hospitals & Health Care,* 223 Conn. 450, 458, 612 A.2d 1217 (1992). Gauged by this standard, the trial court's findings must stand.

The trial court found that the decedent had intended to vest title to the real property in the defendants immediately and irrevocably. This critical finding was supported by the following evidence. At the time of the conveyance, the decedent told the defendants that it was his intention that they have the property then, in accordance with his promise to their mother. After the decedent executed and recorded the deed, it was not mailed back to him but was mailed to the defendant Julia Lawrence. The decedent's continued control of the property thereafter was with the permission of the defendants. Between 1968 and 1991, Julia Lawrence and her husband made repairs to the house. Indeed, there was evidence that, in 1969, the defendants acted consistently with the decedent's intent to vest title to the property in them: they exercised ownership of the property by serving the decedent and the plaintiff with notices to quit the premises, although evidently the defendants never actually filed a summary process action. Finally, the plaintiff had told tenants who complained about the condition of the building that they should contact Julia Lawrence. There is, therefore, ample evidence in the record to support the court's findings, and we cannot say that we are left with a definite and firm conviction that there has been a mistake.

## III

The plaintiff's final claim is that the trial court's finding regarding the joint survivorship account is clearly erroneous. The plaintiff argues that the court could not find, as it did, that the decedent intended to vest ownership of the account in Paul Dalia because, contrary to the court's finding that the decedent gave Paul Dalia the keys to his safety deposit box as he lay dying on

November 13, 1989, the bank records indicate that the decedent had closed out the box on September 28, 1989. Although the plaintiff's characterization of the documentary evidence regarding the safety deposit box is accurate, we are not persuaded that this slight inaccuracy in the trial court's finding is sufficient to undermine its conclusion regarding the survivorship account.

The plaintiff does not dispute that the ownership of the survivorship account is governed by General Statutes § 36-3.[11] Nor does she dispute that, pursuant to this statute, she had the burden of persuading the trial court, by "clear and convincing evidence," that the creation of the account by the decedent did *not* evidence his intention "to vest title to such deposit or account, including all additions and increments thereto, in [the] survivor . . . ." General Statutes § 36-3 (a); see *Cooper* v. *Cavallaro,* 2 Conn. App. 622, 626, 481 A.2d

---

[11] General Statutes § 36-3 provides: "JOINT DEPOSITS AND ACCOUNTS. (a) When a deposit has been made in this state in any state bank and trust company, national banking association or savings bank or an account has been issued in this state by any savings and loan association or federal savings and loan association or credit union, in the names of two or more persons and in form to be paid to any one or the survivor, or survivors, of them, such deposit or account and any additions thereto made by any of such persons after the making or issuance thereof, together with all dividends or interest or increases credited thereon, shall be held for the exclusive use of such persons and may be paid to any of them during the lifetime of all of them or to the survivor or survivors after the death of one or more of them, and such payment and the receipt or acquittance of the person or persons to whom such payment is made shall be a valid and sufficient release and discharge for all payments so made. The making of a deposit or issuance of an account in such form shall, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, be prima facie evidence, in any action or proceeding respecting the ownership of, or the enforcement of the obligation created or represented by, such deposit or account, of the intention of all of the named owners thereof to vest title to such deposit or account, including all additions and increments thereto, in such survivor or survivors.

"(b) This section shall not apply to any deposit or account where any owner died before October 1, 1971, nor shall it apply to any action pending on said date."

101 (1984) (plaintiff required, under § 36-3, to prove by clear and convincing evidence that survivorship account was not valid inter vivos gift). The gist of the plaintiff's claim is that the conflict between Paul Dalia's testimony regarding his conversation with the decedent on November 13, 1989, and the documentary evidence rendered his "testimony as [to] the purported conversation and his actions thereafter . . . completely and wholly incredible." We disagree.

First, as the defendants point out, Paul Dalia did not testify that he took the passbook from the safety deposit box on November 13, 1989; he testified that he closed out the survivorship account on that date. Thus, although the trial court's finding is inaccurate in this regard, the gist of that finding is accurate, namely, that on November 13, 1989, the decedent relinquished full control of the passbook to Paul Dalia, and that Paul Dalia thereafter acted consistently with that relinquishment.

Second, the trial court specifically found that the plaintiff had failed to convince it by clear and convincing evidence that the statutory presumption created by § 36-3 was rebutted. There is nothing in this record that would justify our upsetting that factual finding.

The judgment is affirmed.

In this opinion PETERS, C. J., CALLAHAN and NORCOTT, Js., concurred.

BERDON, J., dissenting and concurring. I disagree with parts I and II of the majority opinion and concur in the result reached in part III.

I

The majority leaves the plaintiff, a widow who was married to the decedent for twenty-two years, penniless notwithstanding the fact that her decedent hus-

band had net assets at the time of his death valued at approximately $163,000. Indeed, in order to pursue this litigation, she was required to appeal in forma pauperis. The majority's conclusion that trust savings accounts established by a decedent pursuant to General Statutes § 36-110 (a) (Totten trust) can defeat the rights of a surviving spouse to her statutory share of the funds in those accounts is *contrary* to the public policy of this state; General Statutes §§ 45a-436 and 45a-437;[1] *contrary* to the prevailing view acknowledged by this court in *Salvio* v. *Salvio,* 186 Conn. 311, 441 A.2d 190 (1982); *contrary* to the public policy of the majority of jurisdictions that have ruled on this issue;[2] *contrary* to the Restatement of Trusts; 1 Restatement (Second), Trusts § 58, comment e;[3] *contrary* to the leading treatise on trust law; IA A. Scott & W. Fratcher, Trusts (4th Ed

[1] See footnote 5 of the majority opinion.

[2] See *Montgomery* v. *Michaels,* 54 Ill. 2d 532, 537–38, 301 N.E.2d 465 (1973) (Totten trust, over which decedent maintains control during his or her lifetime, may not deprive surviving spouse of statutory share, regardless of decedent's intent in creating the savings account trust); *Whittington* v. *Whittington,* 205 Md. 1, 11, 106 A.2d 72 (1954) (gift may be set aside if donor spouse retained dominion and control over the property during his lifetime); *Mushaw* v. *Mushaw,* 183 Md. 511, 519, 39 A.2d 465 (1944) ("[a] husband has an undoubted right to transfer his personal property during his lifetime . . . but where he does not part with dominion over the property transferred, the issue of good faith is immediately raised"); *Sturgis* v. *Citizens National Bank,* 152 Md. 654, 659–60, 137 A. 378 (1927) (a spouse is free to make a gift for the purpose of depriving his or her spouse of any share in the property, provided that the spouse does not maintain dominion and control over the property during his or her lifetime); *In re Estate of Jeruzal,* 269 Minn. 183, 196, 130 N.W.2d 473 (1964) ("The statutory policy against allowing the widow to be left destitute should not be subordinated to the policy of giving broad effect to savings account trusts, however desirable the latter might be. We cannot overlook the danger that lies in the general use of Totten trusts as they may affect the surviving spouse."); see also annot., 64 A.L.R.3d 187, §§ 7 through 9.

[3] "Although the surviving spouse in claiming his or her statutory distributive share of the estate of the decedent is not entitled to include in the estate property transferred during his lifetime by the decedent in trust for him-

1987) § 58.5;[4] and *contrary* to the Uniform Probate Code.[5] The majority's position has also been criticized by commentators. See, e.g., M. Wenig, "The Marital Property Law of Connecticut: Past, Present and Future," 1990 Wis. L. Rev. 807, 855 (1990).

It troubles me that the majority fails to protect poor widows and widowers, yet would not hesitate to set aside the trust for creditors of the spouse's estate. See *Salvio* v. *Salvio,* supra, 320 ("[i]t is generally accepted that the funds on deposit may be reached by the depositor's creditors during his lifetime and, if he dies insolvent, after his death"). The majority apparently supports this inequity.

self for life with remainder to others, even though the decedent reserves a power of revocation (see § 57, Comment c), the surviving spouse of a person who makes a savings deposit upon a tentative trust can include the deposit in computing the share to which such surviving spouse is entitled." 1 Restatement (Second), Trusts § 58, comment e, pp. 157–58.

[4] "It is true that it is generally held that the creation of a revocable trust is sufficient to cut out the surviving spouse, at least if the settlor does not reserve too great a control over the property. In the case of the savings-deposit trust, however, the depositor reserves such complete control that it would seem that, even though the trust is valid as against the personal representative of the depositor, *it should not be valid as against the surviving spouse.* Certainly the policy underlying the statute protecting the surviving spouse is stronger than the policy underlying the statute providing for certain formalities to evidence a testamentary disposition. It may well be held that the creation of a savings-deposit trust is valid but not effective to cut out the surviving spouse." (Emphasis added.) IA A. Scott & W. Fratcher, Trusts (4th Ed. 1987) § 58.5, p. 232.

[5] The general comment to article 2, part 2 of the Uniform Probate Code (1969) provides: "The sections of this Part [the elective share section] describe a system for common law states designed to protect a spouse of a decedent who was a domiciliary against donative transfers by will and will substitutes which would deprive the survivor of a 'fair share' of the decedent's estate." 8 U.L.A. 73 (1983).

Under § 2-202 (1) of the Uniform Probate Code, the following amounts are added to the augmented estate: "(i) any transfer under which the decedent retained at the time of his death the possession or enjoyment of, or right to income from, the property; (ii) any transfer to the extent that the decedent retained at the time of his death a power, either alone or in conjunction with any other person, to revoke or to consume, invade or dispose of the principal for his own benefit . . . ." 8 U.L.A. 76 (1983).

Indeed, Chief Justice Peters in *Salvio* v. *Salvio,* supra, 320–21, wrote for a unanimous court the following: "Although there is no such consensus on the right of a spouse to reach funds deposited in savings account trusts when computing an elective share of the depositor's estate, *the prevailing view* is that, since the decedent spouse exercised such complete power over the funds during his lifetime, the surviving spouse should be permitted to include them." (Emphasis added.)

It is clear that a person has a right to make a gift of property during his or her lifetime, even though the gift deprives the surviving spouse of his or her statutory share. Nevertheless, if the decedent, after making the purported gift, retained complete and absolute dominion and control over the property, the surviving spouse cannot be deprived of his or her statutory share in the property. " 'If the disposition by the husband be bona fide, and no right is reserved to him, then, though made to defeat the claim of the wife, it will be good against her, because an act cannot be denounced as fraudulent which the law authorizes to be done. But if it be a mere device or contrivance, by which the husband, not parting with the absolute dominion over the property during his life, seeks, at his death, to deny his widow that share of his personal estate which the law assigns to her, then it will be ineffectual against her.' " *Sturgis* v. *Citizens National Bank,* 152 Md. 654, 659–60, 137 A. 378 (1927), quoting *Hays* v. *Henry,* 1 Md. Ch. 337 (1848); see also *Montgomery* v. *Michaels,* 54 Ill. 2d 532, 537–38, 301 N.E.2d 465 (1973); *Whittington* v. *Whittington,* 205 Md. 1, 11, 106 A.2d 72 (1953); *Mushaw* v. *Mushaw,* 183 Md. 511, 519, 39 A.2d 465 (1944). The present case is even more compelling because the decedent treated the property as if it were his own up until the time of death. The majority

sets us back more than one hundred years to a time when a decedent could elect to deprive the spouse of any part of his or her estate.[6]

## II

I disagree with the majority's conclusion that the decedent had intended to vest title to the real property in the defendants immediately and irrevocably. I recognize that the determination of whether a gift has been made is " 'not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be made' "; *Kriedel* v. *Krampitz,* 137 Conn. 532, 534, 79 A.2d 181 (1951); and that we must give deference to the trial court's findings of fact. *Rostain* v. *Rostain,* 214 Conn. 713, 716, 573 A.2d 710 (1990). Nevertheless, our deference does not preclude review entirely, nor does it give the trial court carte blanche. Here, the defendants had the burden of proving by *clear and satisfactory evidence* that the decedent had made an inter vivos gift of the house to his children. *Long* v. *Schull,* 184 Conn. 252, 255, 439 A.2d 975 (1981). "Clear and satisfactory" evidence is the equivalent to "clear and convincing" evidence. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 4.4.1 (b), pp. 73–74. This standard of proof is sustained only if the evidence "induces in the mind of the trier a reasonable belief that the facts asserted are *highly probably true,* that the probability that they are true or exist is *substantially greater* than the probability that they are false

---

[6] The majority argues that the results in this case are justified under *Cherniack* v. *Home National Bank & Trust Co.,* 151 Conn. 367, 198 A.2d 58 (1964), because "a financially sophisticated decedent" would have reached the same result with an inter vivos trust. Simply put, the plaintiff in *Cherniack* never argued that the creation of the trust to avoid the spouse's obligation under General Statutes §§ 45a-436 and 45a-437 was against public policy. In any case, it is not acceptable for a spouse—either in a "sophisticated" manner or through a "poor man's trust"—to deprive a surviving spouse of his or her minimum share of the property that the spouse owns at the date of death.

or do not exist." (Emphasis added; internal quotation marks omitted.) *Lopinto* v. *Haines,* 185 Conn. 527, 534, 441 A.2d 151 (1981).

We have long held that a gift inter vivos is valid, but one causa mortis is not. "One may transfer property in such a way that interests in it will arise only at his death, and he may transfer it in contemplation of his death, in lieu of making a will; but to be valid such transfers must convey a present interest. . . . One may not make a valid transfer of property where the intent is not to convey a present interest, but solely to create interests which will arise at death, except in compliance with the requirements of the Statute of Wills; and any such attempted transfer is void. . . . If this were not so it would lie in the power of any person at any time, by making conveyances of property, to circumvent the statute. The intent of the transferor, whether to convey a present interest or to make a disposition of his property to take effect only at his death, is the controlling element in determining the validity of a transfer. . . . That a transfer of property was executed and delivered with intent to make a testamentary disposition of it, may be shown by parol evidence; this would not be to vary the terms of the instrument but to establish the underlying illegality of the transaction." (Citations omitted.) *Bowen* v. *Morgillo,* 127 Conn. 161, 167, 14 A.2d 724 (1940).

The undisputed facts concerning the twenty-two years after the execution of the deed in 1968 prevent a finding that the defendants sustained their burden by *clear and convincing evidence* that the decedent had made a valid gift of the house to the defendants. The property was a home to the decedent and the plaintiff for twenty-two years. They maintained the property by "doing repairs, hiring and paying contractors, paying real property taxes, insurance for the house, sewer use charges, water use charges. [They] rented the

apartment unit and collected the rents, reported the income on their joint tax returns, took deductions on their tax returns, negotiated leases with the tenants, [and] dealt with tenant issues." In addition, when the decedent took out a building permit, he listed himself as the owner of the home. The decedent held himself out as the owner of the property to tenants and neighbors. Indeed, the decedent stated to his children that they would receive the property upon his death.

I would hold that the defendants failed to prove by clear and convincing evidence that there had been a valid inter vivos transfer of the home in 1968 and would order that the home is part of the decedent's estate.

### III

Because General Statutes § 36-3 places the burden on the plaintiff to prove by clear and convincing evidence that the decedent did not intend to make a gift of the survivorship savings account, and because the plaintiff neither challenges the statute nor claims that the public policy of the state is to make the deposit subject to the surviving spouse's rights under General Statutes §§ 45a-436 and 45a-437, I concur in the result of part III.