[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Lilian Soucy, (hereinafter "the plaintiff") commenced the present action against the defendants, Allan Soucy (hereinafter "the defendant") and Cheryl J. Hilbert (hereinafter "Hilbert.") The plaintiff alleges that beginning in 1994, she loaned $28,995 to her son, the defendant Allan Soucy, to be repaid on demand without interest. The plaintiff further alleges that on December 19, 1995, the defendant conveyed certain real property by quitclaim deed located at 167 Oakville Avenue, Waterbury, Connecticut ("the Property") to Hilbert, without consideration and with an intent to defraud the plaintiff.
Briefly stated, the issues presented are whether the payment of the $28,995 to the defendant constituted a loan or a gift and whether the conveyance of the property to Hilbert was fraudulent. The defendant has alleged by special defense that, "[a]ll monies and anything of value the plaintiff gave the defendant were gifts and not loans."
The trial was held on April 19, 2000. The parties introduced testimony from two witnesses and presented 16 exhibits. The parties filed post-trial briefs and proposed findings of fact.
 DISCUSSION A. Claim of Debt
From the credible evidence presented at trial, the court finds the following relevant facts. The plaintiff, Lilian Soucy, age 77, resides at 152 Hutchinson Street, Waterbury, Connecticut. Mrs. Soucy is the mother of the defendant, Allan Soucy. The defendant, Allan Soucy, age 56, has been a resident of Montrose, Colorado since 1997. In 1994, the defendant Cheryl Hilbert, was the girlfriend of the defendant Soucy. Their relationship was formalized by marriage in Montrose, Colorado on June 5, 1999.
It became necessary for the plaintiff to obtain employment in order to support herself following the death of her. husband in 1966. The income which she receives from social security is insufficient to provide for CT Page 7287 her needs. Currently, the plaintiff is employed at the Commission on Aging, in Waterbury, Connecticut.
The defendant relocated to the state of California following the death of his father. The defendant has held various occupations interspersed between periods of unemployment. His employment included working in the business office of California Edison, operating trucking company and carpentry.
The parties agree that the defendant received $28,995 and there has been no repayment. The defendant asserts, however, that the monies were a gift, not a loan, and therefore no obligation of repayment exists. The plaintiff made written demand for payment, through her attorney, by letter dated December 1, 1995. (Plaintiff's Exhibit E.) The defendant further maintains that the monies given to him were not the property of the plaintiff. In this regard, the defendant claimed at trial that a substantial portion of the funds were actually the property of the plaintiff's now deceased sister, Marie Rinaldi. At the time the defendant received the money, there apparently was no discussion between the parties regarding the details of repayment. (Transcript Apr. 19, 2000, p. 19.) There is no previous history of large monetary gifts made to the defendant by the plaintiff. Mrs. Soucy and her son have a long standing, estranged relationship burdened with mutual hate and mistrust.
The defendant's testimony regarding the source and ownership of the funds is not credible. The evidence demonstrated that the funds were owned by the plaintiff. The plaintiff obtained the funds from various sources including approximately $25,000 received from a deceased friend.
The defendant initially contacted the plaintiff in early 1994. The defendant informed his mother that he required surgery on his arm and did not have health insurance. Out of concern for her son, and in response to his request, the plaintiff provided monies to him to assist with the anticipated medical expenses. The plaintiff introduced evidence of these transactions through various checks in the total amount of $22,395. (Pl.'s Ex. A.)
The defendant self described the condition in his arm as "salesman's elbow." (Tr. Apr. 19, 2000, p. 89.) The defendant testified that he ultimately did not have the surgery, rather, he treated it with physical therapy that consisted of squeezing a rubber ball and taking "massive doses of vitamin B12." (Tr. Apr. 19, 2000, p. 91.) The defendant indicated that he used the money for his own benefit, specifically, he indicated that he paid bills, including medical bills, a mortgage and purchased a computer. CT Page 7288
During a telephone conversation with Hillman in 1994, the plaintiff was informed that Hillman's car had broken down and she was in need of another vehicle. In response to this conversation, the plaintiff testified that she purchased a 1977 Cadillac for $3,500, paid $795 in transportation fees to ship the car to California, and expended monies for Various expenses incurred, including $1,000 for insurance and registration. (Pl.'s Ex. B; Defendant's Ex. 7.)
At trial, the defendant introduced a letter from the plaintiff which states, inter alia, that the 1977 Cadillac was a gift. (Defs.' Ex. 7.) The plaintiff testified at trial that her son required her to sign the gift letter, yet she did not fully understand its purpose. The defendant gave convoluted testimony regarding the circumstances surrounding the letter. In the court's opinion, however, it was intended to avoid the imposition of California taxes and other fees. The defendant claims that the 1977 Cadillac was forced upon him by his mother. This assertion is not supported by the evidence. The proven facts demonstrate that the defendant kept the vehicle for several years, and thereafter sold it and retained the proceeds.
The final transaction took place in 1994 when the defendant came to Connecticut to attend the funeral of the plaintiff's sister, Marie Rinaldi. The defendant required funds for hotel accommodations, gas, and other expenses. The plaintiff testified that she gave the defendant $1,200 in cash for these expenses.
The defendant continued to request additional funds, however, the plaintiff had exhausted her meager savings and she informed him that "the well had run dry." (Tr. Apr. 19, 2000, p. 24.) The plaintiff demanded repayment of the $28,995 when it came to her attention that the defendant and Inllman had purchased a computer with a portion of the funds. (Pls' Ex. E.)
"The burden of proving the essential elements of . . . a valid gift rests upon the party claiming the gift. Kriedel v. Krampitz, 137 Conn. 532,534, 79 A.2d 181; Nogga v. Savings Bank of Ansonia, 79 Conn. 425, 426,65 A. 129. There must be not only a delivery of possession of the property but also an intent on the part of the donor that title shall pass immediately to constitute a valid gift inter vivos of personal property. Kukanskis v. Jasut, 169 Conn. 29, 34, 362 A.2d 89, 8; Guinan's Appeal, 70 Conn. 342, 347, 39 A. 482." Bergin v. Bergin, 177 Conn. 53,56-57, 411 A.2d 22 (1979)
"It is true that the donative intention need not be expressed, nor the delivery made, in any particular form or mode." Hebrew University Assn. v.Nye, 148 Conn. 223, 232, 169 A.2d 641 (1961). See also Fasano v. Meliso, CT Page 7289146 Conn. 496, 502, A.2d 512 (1959). The intent to make a gift is a question of fact. See Bergin v. Bergin, supra, 177 Conn. 57.
"The question of whether a gift inter vivos . . . has been made is within the exclusive province of the court. The determination of whether a gift has been made is not reviewable unless the conclusion of the court is one which cannot reasonably be made." (Citations omitted.) Dalia v.Lawerence, 226 Conn. 51, 71, 627 A.2d 392 (1993)
In the present case, the defendant has totally failed to prove the existence of a gift. To the contrary, the credible evidence presented at trial demonstrates that at the urging of the defendant, his elderly mother provided him with funds from her limited financial resources to assist him in his purported time of need. The plaintiff had harsh personal feelings toward the defendant. The plaintiff clearly lacked the financial resources to make a substantial gift to the defendant. Moreover, the plaintiff never told the defendant that the disbursements were to be a gift, nor was there a prior history of gift giving. For these reasons, the court finds that the plaintiff did not intend to make a gift. Accordingly, the court finds that the disbursements to the defendant were not a gift, but were in fact a loan with a present outstanding obligation to repay. The plaintiff made demand for repayment on December 1, 1995 (Pl.'s Ex. E.)
 B. Fraudulent Conveyance
The property which is the subject of this dispute is residential property located at 167 Oakville Avenue, Waterbury, Connecticut. The defendant received the property by quitclaim deed from the plaintiff's sister, Theresa Rotella, on September 13, 1995. (Pl.'s Ex. C.) Thereafter, the property was conveyed from the defendant to Cheryl J. Hilbert by quitclaim deed on December 19, 1995. (Pl.'s Ex. D.) The deed recites that the property is quitclaimed for a "valuable consideration other than money." Id. The defendant claimed that he did not have any creditors at the time of the conveyance to Hilbert, but acknowledged the express purpose was to avoid creditors. (Tr. April 19, 2000, p. 74.)
The plaintiff's attorney in a collection letter dated December 1, 1995, advised the defendant of the $28,995 debt and stated "it is hoped that you will be agreeable to the above plan as to avoid taking this matter any further." (Us Ex. E.) Notwithstanding the defendant's assertion of an absence of outstanding debts, the conveyance took place within eighteen days of the plaintiff's demand letter dated December 1, 1995. Id.
"The question of whether a fraudulent conveyance took place is solely a question of fact to be determined by the trier. For a plaintiff to CT Page 7290 succeed, [a fraudulent conveyance] must be proved, if at all, by clear, precise and unequivocal evidence. [The Court] will not disturb the trial court's factual findings unless they are clearly erroneous and unsupported by the record." (Citations omitted; internal quotation marks omitted.) Davenport v. Quinn, 53 Conn. App. 282, 303 ___ A.2d ___ (1999)
"General Statutes § 52-552e provides that a transfer is fraudulent `if the creditor's claim arose before the transfer was made or the obligation was incurred' and the transferor made the transfer with an `intent to hinder, delay or defraud any creditor of the debtor. . . . " `Creditor' means a person who has a claim.' General Statutes § 52-5 (4). `Claim' means a right to payment. . . . General Statutes §52-552b (3)." Id., 303-04.
In the instant matter, the defendant admitted that he transferred the property to Hillman without monetary consideration for the purpose of avoiding the claims of creditors. The only existing creditor at the time of the conveyance was the plaintiff. The evidence demonstrates that the conveyance took place a mere eighteen days after the demand of payment. Thus, the plaintiff has established that her claim existed at the time of the conveyance of the property and it was made with the intent to hinder and delay satisfaction of the debt.
 DAMAGES
Accordingly, the court enters judgment in favor of the plaintiff in the amount of $28,995.00 plus costs. The plaintiff is awarded interest pursuant to General Statutes § 37-3a. As a result of the fraudulent conveyance in this matter, this judgment may be satisfied by any monies which were derived from the sale of the property to a third party.
So Ordered.
PETER EMMETT WIESE, Judge