JAMES BURTON *vs.* THE BRIDGEPORT SAVINGS BANK.

Two savings bank deposit books were left by *A. B.* at his death in 1879, one of which stood in his own name and the other in the name of "*J. B.*, order of *A. B.*" *J. B.* was son of *A. B.* On the last page of the first book was the following order: "May 12th, 1878. Treasurer of B. Savings Bank:—Pay *J. B.* what may be due on my deposit book No. —. *A. B.*" On the last page of the other was the following: "August 12th, 1871. Treasurer of B. Savings Bank:—At my decease pay *J. B.* what may be due on my deposit book No. —. *A. B.*" Further deposits were made and money drawn out on both books after the dates of the orders, the books being kept by the treasurer of the savings bank and *A. B.* having access to them whenever he pleased as long as he lived. *J. B.* never had possession of the books, nor any knowledge of them during the life of his father. Held not to constitute a valid gift of the money represented by the bank books.

[Argued October 28th, 1884—decided February 26th, 1885.]

ACTION for money held by the defendants as a deposit; brought to the Superior Court, and tried to the court before *Culver, J.* Facts found and judgment rendered for the plaintiff. Appeal by the defendant. The case is fully stated in the opinion.

*C. Thompson*, for the appellant, cited—1 Swift Dig., 438,

Burton v. Bridgeport Savings Bank.

2 Schouler on Pers. Prop., 118; *Alsop* v. *Swathel*, 7 Conn., 500; *Raymond* v. *Sellick*, 10 id., 480; *Young* v. *Young*, 80 *N. York*, 422; *Jackson* v. *Twenty-third St. Railway Co.*, 88 id., 520; *Robinson* v. *Ring*, 72 Maine, 140; *Trough's Estate*, 75 Penn. St., 115; *Simmons* v. *Cincinnati Savings Society*, 31 Ohio St., 457; *Wilcox* v. *Matteson*, 53 Wis., 23.

*W. K. Seeley*, for the appellee, cited—Hill on Trustees, 130; *Minor* v. *Rogers*, 40 Conn., 512; *Kerrigan* v. *Rautigan*, 43 id., 17; *Martin* v. *Funk*, 75 N. York, 134; *Willis* v. *Smyth*, 91 id., 297; *Souverbye* v. *Arden*, 1 Johns. Ch., 256; *Bunn* v. *Winthrop*, id., 329; *Ray* v. *Simmons*, 11 R. Isl., 266; *Crawford's Appeal*, 61 Penn. St., 52; *Howard* v. *Windham Co. Savings Bank*, 40 Verm., 597; *Gardner* v. *Merritt*, 32 Maryl., 78; *Exton* v. *Scott*, 6 Sim., 31; *Fletcher* v. *Fletcher*, 4 Hare, 67; *Richardson* v. *Richardson*, L. R., 3 Eq. Cas., 686; *Morgan* v. *Malleson*, 10 id., 475.

CARPENTER, J. This is an action to recover money deposited in the Bridgeport Savings Bank by Alden Burton, deceased, during his lifetime. The amount claimed is evidenced by two deposit books, one, No. 10,065, is in the name of Alden Burton; the other, No. 21,541, is in the name of "James Burton, order of Alden Burton." It is conceded that all the deposits credited on these books were made by Alden Burton from his own funds. He died February 26th, 1879, leaving a widow and two sons. He left a will giving to the widow the use of one third of his personal property during life, and to the sons in substance the residue of the estate.

On the last page of book No. 10,065, under the words "an order," partly in print and partly in writing, is the following:—

"BRIDGEPORT, April 9th, 1868.

"Treasurer of Bridgeport Savings Bank:

"Pay James Burton $\frac{000}{100}$ dolls., or what may be due on my deposit book No.

"ALDEN BURTON.

"Witnessed by George Sterling."

Mr. Sterling was the secretary and treasurer of the savings bank at the time he witnessed the order. There were no additional deposits entered on the book after April 9th, 1868, but there were sums of money from $15 to $1,500, drawn out after that date and prior to May 28th, 1878, amounting to $2,957.49.

The other book, No. 21,541, had on its last page, partly in print and partly in writing, the following order :—

"BRIDGEPORT, August 12th, 1871.

"Treasurer of Bridgeport Savings Bank:

"At my decease pay James Burton $\frac{000}{100}$ dolls., what may be due on my deposit book No.

"ALDEN BURTON."

Deposits were made and money drawn out after the date of this order, which were entered on the book.

These books with others were placed in a large envelope and left at the banking house with the treasurer, and Alden Burton had access to them whenever he pleased as long as he lived. This envelope had written on the face of it in the upper right hand corner these words:—"Deliver this to James Burton after my decease with all the books;" but by whom, when, or where they were written, did not appear, nor did it appear what the contents of the package were when written, other than as stated above. It was not in the handwriting of Alden Burton or of any one connected with the bank. For aught that appeared it might have been written many years ago.

James was the son of Alden, was named in the will as one of the executors, but never served, and when this suit was brought was subject to a conservator. He never had possession of the bank books, and had no knowledge of them, or that his name was connected with them during the lifetime of the father.

These are the material facts ; and upon them the defendant claims that the plaintiff could not maintain his suit, among other reasons, because he had "neither the possession of nor the title to said books;" and because "there

was no legal and valid gift of said books to the plaintiff." These claims the court overruled and rendered judgment for the plaintiff to recover the amount represented by the books. The defendant appealed.

There are other questions in the case, but the only one we have any occasion to discuss is whether there was a valid, effective gift of the money deposited to the plaintiff during the lifetime of Alden Burton.

In *Camp's Appeal from Probate*, 36 Conn., 88, the donor gave to his nephew certain bank books, accompanied with declarations showing that he intended a present gift of the money deposited and represented by the books. It was claimed that inasmuch as there was no order for the payment of the money there was no delivery of the gift. This court held that the delivery of the books, thereby intending to give the money, vested in the nephew an equitable title to the money, and regarded it as a completed gift.

This case is distinguishable from that in two particulars; here there was no delivery of the books to the plaintiff, and there is no finding that Alden Burton intended a present gift. We are now asked not only to dispense with an order for the payment of the money, but also with a delivery of the books, and even an intention to make a present gift.

The case of *Minor* v. *Rogers*, 40 Conn., 512, is more like the present one. The donor, possessed of considerable property, deposited $250 in his own name as trustee for the plaintiff, then a minor. She told the plaintiff's father that she had deposited it for the plaintiff and that he would need it in getting his education. And the court found that at the time she made the deposit she intended it as a gift to the plaintiff to take effect either then or at some future time. She subsequently drew out the money for her own use, and died, leaving a will by which she gave the plaintiff nothing. The court held that the money so deposited was a present executed gift.

In *Kerrigan* v. *Rautigan*, 43 Conn., 17, the donor made a deposit in the name of the donee, a minor, naming her

mother as guardian. It was found that she then intended to make a gift of the money to the donee.

The distinction between the case at bar and the two cases last cited, consists not so much in the circumstance that in each of those cases the donee was a minor, while in this case he was of full age, as in the fact found that the donor in each case intended a present gift, no such intention being found in the present case. The circumstance that the donor in the one case made the deposit subject to his control as trustee, and in the other she made it subject to the order of a third person as guardian, did not prevent the gift from taking effect presently, such being the intention of the donors. In this case we look in vain for any such intention on the part of Alden Burton. It is not found in express terms, and the facts stated as matter of law do not show such an intention.

The fact that a part of the deposits were made in the plaintiff's name affords the strongest evidence of an intention to make a gift; but that does not necessarily show an intention to make a present gift; it is equally consistent with an intention to have the gift take effect at some future time.

The direction on the envelope, "Deliver this to James Burton after my decease, with all the books," is not of much weight. It is not certain by whom or for what purpose that was written. But if it is to be regarded as the language of Alden Burton, its meaning may be to deliver it to him as executor. So far as this direction is to be considered as the direction of the father, and to refer to the books now in question, it clearly shows that the father did not intend that the books should be delivered to the son for any purpose until after his decease.

The absence of any declaration by the father to the son or others that he intended to give the money to the son during his life, is significant, especially as there were two occasions, once when he went to the bank with the conservator, and once with the son, when we should naturally expect, if he intended to give the money then or previously

deposited to his son to take effect immediately, that he would say so, rather than use an indefinite, vague expression that he was going to deposit money for him.

The fact also that one of the books was in his own name, that the other was at his absolute control, that he kept the books in his own possession, and drew out and deposited money as he pleased and as long as he lived, is important.

But the circumstances which seem to be of controlling weight are the two orders which he signed, one in each of the books. He was a depositor in the bank for twenty years before his death, and was a corporate member and a trustee. As such he knew the regulations of the bank and what was required in order to effect a valid transfer of the money therein deposited. He had that subject in his mind and acted upon it so far as to sign the orders referred to. The one in the book standing in his own name was payable to his son without limitation as to time, but it was never delivered. The one in the book standing in the name of "James Burton, order of Alden Burton," was in terms to pay at his decease. That order, too, was never delivered. For some reason, if he ever intended to give the money to his son, he never consummated the gift by vesting in him either the legal or equitable title.

The law will recognize and enforce gifts where they are clearly established if creditors are not thereby prejudiced; but claims of this character are so open to fraud, and so liable to be made, especially against the estates of deceased persons, when there is little foundation for them, that courts will not regard them with favor, and will not sustain them unless fully proved; in other words, there is no presumption in their favor.

The court did not find in terms that there was a gift during the lifetime of Alden Burton, and the facts stated fail to establish one.

There was error in the judgment rendered by the court below, and a new trial must be granted.

In this opinion the other judges concurred.