BRJM, LLC *v.* OUTPUT SYSTEMS, INC., ET AL.
(AC 26642)

Schaller, Gruendel and Peters, Js.

Argued November 13, 2006—officially released March 27, 2007

*Susan M. Phillips*, with whom was *James J. Murphy, Jr.*, for the appellant (plaintiff).

*David L. Weiss*, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, BRJM, LLC, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendant Output Systems, Inc.,[1] in this breach of contract action. On appeal, the plaintiff claims that the court improperly found the parties' contract to be void due to mutual mistake. The defendant advances, as an alternate ground on which to affirm the court's judgment, that the contract was

---

[1] This action was commenced against Output Systems, Inc., and Howard Engelsen, acting as its agent. Although the contract at issue in this case named Engelsen as the seller, Output Systems, Inc., an entity of which Engelsen is the principal, is the record owner of the property. For the purpose of this appeal, we refer to Output Systems, Inc., as the defendant.

void due to lack of capacity. We conclude that the contract was not rendered void as a result of mutual mistake or lack of capacity. Accordingly, we reverse the judgment of the trial court and remand the case for a new trial.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. On May 3, 2002, Nicholas Kepple, acting on behalf of M & K Realty, LLC, entered into a purchase and sale agreement (agreement) with Howard Engelsen with respect to a parcel of land known as lot five, north side of Barnes Road, Stonington. Kepple previously had learned of Engelsen's desire to sell both lots five and six on Barnes Road while serving as his attorney in other matters in late 2001. Kepple expressed to Engelsen his personal interest in acquiring the properties and advised him to retain separate counsel for the transaction. Thereafter, Kepple offered Engelsen $210,000 for lot six, and Kepple's friend, Michael McGuiness, offered Engelsen $209,000 for lot five. Engelsen responded that he would be willing to discuss the offers once both lots had been surveyed.

Following the completion of survey work, Kepple learned that only lot five was available for sale due to a boundary dispute involving lot six and offered Engelsen $210,000 for lot five. Engelsen responded that he would further discuss this offer following an appraisal of the property. To that end, Engelsen obtained an appraisal valuing the property at $277,000, following a determination by the appraiser that the property was three acres and, therefore, not capable of being subdivided, as it did not meet the minimum requirement of 3.7 acres for subdivision. With this information, Engelsen responded to Kepple's offer with a counteroffer of $230,000.[2] Additionally, in his counteroffer, Engelsen requested the removal of a contingency

---

[2] Evidence introduced at trial indicated that Engelsen determined his counteroffer by dividing the difference between Kepple's offer and the figure

clause requiring written confirmation prior to closing on the property as to the availability of a free split, meaning that the property was capable of being subdivided without the need for prior approval from the zoning commission. Kepple accepted Engelsen's counteroffer, agreeing to delete the contingency clause.

Soon thereafter, on May 3, 2002, the parties executed the agreement between M & K Realty, LLC, as purchaser and Engelsen as seller. Pursuant to the agreement, Kepple deposited $5000 with Engelsen's attorney. Throughout the period of negotiations, Kepple intended to form M & K Realty, LLC, as a holding company with McGuiness, his partner in the transaction. After the signing of the agreement, however, McGuiness withdrew from the transaction. Consequently, Kepple arranged for title to be taken in the name of the plaintiff, an existing entity, and, accordingly, assigned the agreement to the plaintiff.[3] Kepple never legally formed M & K Realty, LLC.

After signing the agreement, Engelsen noticed that the appraisal relied on an inaccurate and reduced acreage and failed to take into account the fact that the property could be subdivided. He obtained a second appraisal and discovered that the property was in fact 3.71 acres rather than three acres and, as a result, capable of being subdivided.[4] On the basis of this new information, the revised appraisal valued the property at $490,000. Following the signing of the agreement, Kepple learned from the town zoning enforcement officer

that he had arrived at using an appraised value of $250,000 which accounted for a 10 percent real estate sales commission.

[3] Kepple is a member of the plaintiff.

[4] At trial, the appraiser testified that she was provided with the first notice that a survey map of the property had been filed in the town records when Engelsen asked for a revised appraisal. The appraiser subsequently found the map indicating the property was 3.71 acres, which had been incorrectly filed under Record Press, Inc., a company of Engelsen's from which the property had been transferred to the defendant.

that the property was not entitled to a free split, and therefore, approval from the zoning commission would be necessary in order to subdivide the property. Despite that information, Kepple indicated that he wanted to proceed with the sale. Engelsen, however, informed Kepple by a letter sent by his attorney dated June 5, 2002, that there would be no closing on the property due to a "mistake" in his appraisal.

The plaintiff initiated this breach of contract action against the defendant, seeking specific performance of the contract, as well as money damages and attorney's fees.[5] In response, the defendant raised the special defense of mutual mistake. At the conclusion of the plaintiff's case-in-chief, the defendant moved orally for an evidentiary nonsuit or a directed verdict on the ground that the plaintiff was not the proper party to enforce the agreement and that the agreement was void because M & K Realty, LLC, as an entity that never legally existed, lacked the capacity to enter into the agreement. After hearing argument, the court reserved judgment on the defendant's motion. In its memorandum of decision, issued on May 25, 2005, the court denied the defendant's motion, finding that M & K Realty, LLC, had the capacity to enter into the agreement and that the assignment to the plaintiff was valid, but determined that the agreement was void due to mutual mistake. The court, therefore, rendered judgment in favor of the defendant. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff claims that the court improperly found that the parties' agreement was void due to mutual mistake. We agree.

[5] At oral argument before this court, the plaintiff indicated that the remedy of specific performance may no longer be practical, given the amount of time that has passed, and asked that the court remand the case for a determination of the proper remedy.

In its memorandum of decision, the court determined that mutual mistakes of fact existed as to "the value of the land and its divisibility." In articulating its decision, the court explained that it had found mistakes involving "the size of the property, the fact that it may not be able to be subdivided . . . and . . . the fair market value of the property . . . ." In our view, the court found, in essence, the existence of mutual mistake as to the parties' belief that the property was entitled to a free split and their reliance on an inaccurate appraisal that resulted in a below market purchase price for the property.

"A mutual mistake is one that is common to both parties and effects a result that neither intended." *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.*, 218 Conn. 703, 708, 590 A.2d 968 (1991). In that sense, a mutual mistake requires a mutual misunderstanding between the parties as to a material fact. Cf. *Dainty Rubbish Service, Inc.* v. *Beacon Hill Assn., Inc.*, 32 Conn. App. 530, 537, 630 A.2d 115 (1993).

Whether there has been a mutual mistake is a question of fact. *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.*, supra, 218 Conn. 708. "Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings." (Citation omitted; internal quotation marks omitted.) *McBurney* v. *Cirillo*, 276 Conn. 782, 815–16, 889 A.2d 759 (2006).

We conclude that the court's finding that the parties' mistaken belief as to the availability of a free split constituted a mutual mistake is clearly erroneous for several reasons. Although both parties initially were mistaken as to the requirement of prior approval in order to subdivide the property, this mistake was not material to their bargain. As Kepple explained at trial, the necessity of obtaining prior approval did not render the property incapable of being subdivided; rather, the only consequence was that Kepple would have to file an application with the zoning commission and undergo the approval process in order to subdivide the property. Additionally, any claim that a free split was material to the parties' agreement is fatally undermined by the fact that the parties did not include a provision to this effect in their agreement. Indeed, it is a fundamental principle of contract law that "parties are free to contract for whatever terms on which they may agree." *Holly Hill Holdings* v. *Lowman*, 226 Conn. 748, 755, 628 A.2d 1298 (1993).

Moreover, the defendant's attempt to invalidate the agreement on this ground is a misapplication of the doctrine of mutual mistake. According to the Restatement (Second) of Contracts, in the case of mutual mistake, "the contract is voidable by the *adversely affected party* unless he bears the risk of the mistake . . . ." (Emphasis added.) 1 Restatement (Second), Contracts § 152, p. 385 (1981). In the present case, the fact that it was later determined that approval would be necessary in order to subdivide the property adversely affected the plaintiff, as purchaser, not the defendant, as seller. The defendant cannot seek to invalidate the agreement by asserting the defense of mutual mistake on this basis because the defendant is not the party adversely affected by the mistake.

Finally, the court's finding that the parties were mutually mistaken in their reliance on the appraiser's inaccurate valuation of the property in establishing the

purchase price is clearly erroneous. The plaintiff contends that the mistake in establishing a below market purchase price for the property was a unilateral one made by Engelsen, acting on behalf of the defendant, in reliance on the inaccurate appraisal. We agree.

The factual predicate necessary for a finding of mutual mistake is that both parties relied on the same mistaken information in entering into a contract. *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford,* 248 Conn. 350, 359 n.10, 727 A.2d 1260 (1999). In the present case, the appraisal inaccurately valued the property as a result of appraiser error with respect to the size of the property and whether it could be subdivided. The mistakes of the appraiser, made while acting on behalf of the seller, and the seller's subsequent reliance thereon cannot be imputed to the plaintiff, as purchaser. There was no evidence to support a finding that Kepple, acting on behalf of the plaintiff, relied on the appraisal. The evidence, in fact, supports the opposite conclusion, that Engelsen, acting on behalf of the defendant, obtained the appraisal in order to ascertain the value of the property and subsequently relied on the appraisal's inaccurate valuation in establishing the purchase price. Although the court found that Engelsen had an opportunity to review the appraisal prior to signing the agreement, it made no finding that the plaintiff had a similar opportunity. The undisputed testimony at trial also disclosed that Kepple was not provided with a copy of the appraisal. Notably, the addendum to the appraisal states that the appraisal was intended to be used solely by the client as an estimate of market value. Although there was evidence indicating that Engelsen made reference to the appraised value in explaining how he arrived at his counteroffer, there was no evidence that Kepple was privy to the information on which the appraisal was

based or that he relied on the appraised value in accepting the counteroffer.

In sum, we conclude that the evidence does not support the court's finding of a mutual mistake that rendered the parties' agreement void. The court's finding is, therefore, clearly erroneous.

## II

The defendant raises as an alternate ground on which to affirm the court's judgment the claim that the agreement was void due to lack of capacity.[6] Essentially, the defendant contends that M & K Realty, LLC, lacked the capacity to enter into the agreement because it never existed as a legal entity. As a result, the defendant argues, the assignment of the contract from M & K Realty, LLC, to the plaintiff was also invalid.[7] We disagree. Although we agree that the entity designated as

---

[6] The defendant frames the issue as whether the court properly found that M & K Realty, LLC, could be classified as a de facto limited liability company and that the assignment to the plaintiff was effective. In our view, the issue is more properly stated as whether the agreement is void due to a lack of capacity on the part of M & K Realty, LLC, to contract. In light of our conclusion that this infirmity does not render the agreement void, we decline to reach the issue of whether M & K Realty, LLC, can be properly classified as a de facto limited liability company.

The plaintiff argues that this court should not consider on appeal the issue of corporate capacity because the defendant did not raise this claim as a special defense, as required by Practice Book § 10-46. The plaintiff, however, mischaracterizes the nature of the issue before us. Practice Book § 10-46 requires that "[a]ny defendant who intends to controvert the right of the plaintiff to sue . . . as a corporation . . . shall deny the same in the answer specifically." The defendant has not raised as an alternate ground for affirmance his claim, made orally before the trial court, that the plaintiff is not the proper party to enforce the agreement. Consequently, the issue before us is not whether the plaintiff had the capacity to sue as a corporation but whether M & K Realty, LLC, had the capacity to contract when the parties entered into the agreement.

[7] In its counterstatement of the issues, the defendant also raises the issue of whether the assignment from M & K Realty, LLC, to the plaintiff was effective since it occurred following the alleged breach of the contract by the defendant. We decline to reach this issue as the defendant provided no analysis of this issue in its brief. As a reviewing court, "[w]e are not required to review issues that have been improperly presented to this court through

M & K Realty, LLC, did not legally exist and, therefore, lacked the capacity to enter into the agreement, Kepple, acting as an individual on behalf of M & K Realty, LLC, did have capacity to contract with the defendant. We further conclude that Kepple made a valid assignment of the agreement in his individual capacity.

The issue as to the validity of a contract entered into on behalf of a limited liability company prior to its formation is one of first impression for the appellate courts of this jurisdiction and presents a question of law over which our review is plenary. See *General Accident Ins. Co. of America v. Powers, Bolles, Houlihan & Hartline, Inc.*, 38 Conn. App. 290, 298, 660 A.2d 369, cert. denied, 235 Conn. 904, 665 A.2d 901 (1995). "It is true . . . that in order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties . . . and the identities of the contracting parties must be reasonably certain." (Citations omitted.) *Ubysz v. DiPietro*, 185 Conn. 47, 51, 440 A.2d 830 (1981). It therefore follows that an entity does not have the legal capacity to contract prior to its legal existence.[8] We conclude, however, that a contract entered into prior to an entity's formation is not void ab initio due to lack of capacity because the individual entering into the contract on behalf of the unformed entity has the requisite capacity. It follows that, in the situation of an unformed entity, the individual serves as the party to the contract although the contract is entered into in the entity's name.

an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *Turner v. American Car Rental, Inc.*, 92 Conn. App. 123, 130, 884 A.2d 7 (2005).

   [8] Pursuant to General Statutes § 33-637, a corporation is legally formed when the certificate of incorporation is filed with the secretary of the state. Similarly, a limited liability company is formed when the articles of organization are filed with the secretary of the state. General Statutes § 34-120.

In reaching this conclusion, we find support in the law of agency and corporations. According to the Restatement (Third) of Agency, unless the parties otherwise agree, a person who enters into a contract purportedly as an agent, with the knowledge that the person purportedly represented does not exist, will become a party to the contract if it is intended that the third party be bound thereby. 2 Restatement (Third), Agency § 6.04 and comment (b), pp. 55–56 (2006). This rule is applicable to the situation presented here in which an individual contracted with a third party on behalf of an entity that had not yet been legally formed. See id., comment (c), p. 57. If the parties assent that the contract shall be binding, the individual purporting to act on behalf of the unformed entity will be held personally liable under the contract. See id. Although this rule aims to protect third parties by making purported agents parties to such contracts and imposing personal liability on them, it persuades us for the purpose of the present case that contracts entered into by individuals acting on behalf of unformed entities are enforceable.

We further analogize the present case involving a limited liability company to situations in which contracts are entered into by promoters on behalf of corporations prior to their legal existence. It is well established that "[a] corporation can acquire rights and subject itself to duties with respect to preincorporation matters." *CMG Realty of Connecticut, Inc.* v. *Colannade One Ltd. Partnership*, 36 Conn. App. 653, 661, 653 A.2d 207 (1995). A prerequisite to these contractual rights is the validity of preincorporation contracts and the capacity of individuals to enter into contracts on behalf of unformed corporations. Indeed, "[c]ontracts are frequently made by promoters on behalf of corporations which they expect to organize. Often, the terms of these contracts are such that if the corporation were already

in existence, the contract would be that of the corporation and not of the promoter. *But as it is impossible for the corporation to contract before it comes into existence, the contract is treated as that of the promoter even though the language of the contract is appropriate for a contract by the corporation.*" (Emphasis added.) 12 S. Williston, Contracts (4th Ed. Lord 1999) § 35:71, pp. 534–35. Additionally, our legislature expressly has provided for personal liability for those who knowingly enter into contracts on behalf of corporations prior to their legal formation. See General Statutes § 33-638.[9] This legislative provision presupposes the capacity of individuals to enter into binding agreements on behalf of unformed corporations.

In the present case, the agreement was entered into in the name of M & K Realty, LLC, as purchaser and signed by Kepple as its member. It is undisputed that M & K Realty, LLC, did not legally exist at the time the agreement was signed. At trial, Kepple acknowledged that he never legally formed M & K Realty, LLC, by filing articles of organization. See General Statutes § 34-120. The defendant has not claimed that it was misled or prejudiced because M & K Realty, LLC, did not become a legal entity. The defendant claims, rather, that the agreement is void as a result. The agreement, however, is not rendered void. Kepple, acting as an individual and on behalf of M & K Realty, LLC, had the capacity to enter into the agreement and, in doing so with the knowledge that the entity did not legally exist, became a party to the agreement and personally bound thereby. It follows that Kepple, acting in his individual capacity and as a party to the agreement, made a valid assign-

---

[9] General Statutes § 33-638 provides in relevant part that "[a]ll persons purporting to act as or on behalf of a corporation, knowing there was no incorporation . . . are jointly and severally liable for all liabilities while so acting."

ment of the agreement to the plaintiff, an existing entity.[10]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[10] In its brief, the defendant also argues that because M & K Realty, LLC, did not exist as a legal entity, the agreement violates General Statutes § 52-550, the statute of frauds, because the parties were not identified to a reasonable certainty. The statute of frauds requires the essential terms of contracts for the sale of real estate to be evidenced by a writing, consisting of the subject of the sale, its terms and the parties to it. *Lynch* v. *Davis,* 181 Conn. 434, 438, 435 A.2d 977 (1980). In the present case, the agreement identifies the parties to it, naming Engelsen, as seller, and M & K Realty, LLC, as purchaser. The defendant's argument, therefore, is not properly classified as an assertion of a statute of frauds violation. Instead, in basing its argument on the nonexistence of M & K Realty, LLC, the defendant raises an issue of contract formation, which we addressed in part II.