JAMES WASNIEWSKI *v.* QUICK AND REILLY, INC.
(AC 28063)

McLachlan, Lavine and Hennessy, Js.

Argued October 9, 2007—officially released January 22, 2008

*Thomas J. Sansone,* for the appellant (defendant).

*Frank J. Liberty,* for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendant, Quick & Reilly, Inc., appeals from the judgment of the trial court in favor of the plaintiff, James Wasniewski, finding a breach of contract and awarding damages. On appeal, the defendant claims that the court improperly concluded that (1) the requisite donative intent and delivery existed in order to create a valid gift of the brokerage account at issue, and (2) a valid enforceable contract existed between the plaintiff and the defendant. We affirm the judgment of the trial court.

The court found the following facts. The plaintiff's father, John Wasniewski, opened a brokerage account with the defendant on November 14, 1989, in the plaintiff's name and social security number. The account was funded with the proceeds of $30,000 worth of bonds issued by the Connecticut housing finance authority. The account earned $2115 per year in interest. The total value of the account, including accrued interest, was

found to be $52,085. The account was closed on January 5, 2001, when the funds were withdrawn by someone other than the plaintiff and transferred to a joint account in the name of the plaintiff's father and the plaintiff's brother. The plaintiff was unaware of the account during the entire period that it was in existence. The plaintiff became aware of the account when his father mailed him a tax form 1099 for the 2001 calendar year. All statements for the brokerage account had been sent to the address of the plaintiff's father.

The plaintiff commenced a civil action against the defendant by complaint filed August 18, 2004. The plaintiff set out four causes of action, three of which were dismissed by the court after hearing argument on the defendant's motion for summary judgment filed September 2, 2005. The plaintiff's breach of contract claim was the only claim remaining before the court. In a memorandum of decision filed June 27, 2006, the court, *Hon. Robert C. Leuba*, judge trial referee, held that the account was owned by the plaintiff from the time it was created and that he was entitled to the interest and the principal pursuant to the contract implicit in the relationship between a broker and the owner of an account with that broker. The court further held that the defendant breached this contract when it transferred the funds to someone other than the plaintiff. The plaintiff was awarded $52,085 plus costs.

The defendant filed a motion for reargument on July 11, 2006, which was denied by the court. The defendant filed its appeal September 21, 2006. The defendant then filed a motion for articulation on September 29, 2006, which was granted. The court filed its articulation on October 26, 2006.

To begin, we set forth the standard of review. "The question of whether a gift inter vivos or causa mortis has been made is within the exclusive province of the

court. . . . The determination of whether a gift has been made is not reviewable unless the conclusion of the court is one which cannot reasonably be made. . . . The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact. . . . This court does not try issues of fact or pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *Dalia* v. *Lawrence*, 226 Conn. 51, 70–71, 627 A.2d 392 (1993).

I

The defendant claims that the court improperly held that a valid gift inter vivos was created because of a lack of the requisite intent and affirmative actions necessary to perfect a gift. The plaintiff asserts that ownership of the account is not being disputed by the defendant, and, therefore, the existence of a gift is factually and legally supported by the record. We agree with the plaintiff.

"The term 'gift,' which is more appropriately applied to personal property, is the transfer of property without consideration. The two requisites of a valid gift are 'a delivery of the possession of the property to the donee, and an intent that the title thereto shall pass immediately to him.' [*Guinan's Appeal from Probate*, 70 Conn. 342, 347, 39 A. 482 (1898)]. It is not necessary that there should be a manual delivery of the thing given, nor that it should be made to the donee in person; nor is there any particular form or mode in which the transfer must be made or by which the intention of the donor must be expressed." *Main's Appeal from Probate*, 73 Conn. 638, 640, 48 A. 965 (1901). A rebuttable presumption of donative intent exists when the grantee is the natural object of the grantor's bounty. *Farrah* v. *Farrah*, 187 Conn. 495, 500, 446 A.2d 1075 (1982). We have recognized such a presumption in certain circumstances involving a parent and child. See *Zack* v. *Guzauskas*,

171 Conn. 98, 101 n.1, 368 A.2d 193 (1976). "Where actual delivery has not occurred, the resolution of the issue of whether a donor has made a constructive delivery depends on the circumstances of each case." *Fontaine* v. *Colt's Mfg. Co.*, 74 Conn. App. 730, 734, 814 A.2d 433 (2003). "By the great weight of authority no acknowledgment or acceptance of such a gift is necessary on the part of the donee, since it is highly beneficial and his acceptance is assumed." *Burbank* v. *Stevens*, 104 Conn. 17, 23, 131 A. 742 (1926). "Once the funds are deposited in an account under an individual's name, the account holder is presumed to have title to and control over those funds. See, e.g., 9 C.J.S. Banks and Banking §§ 280, 281 (1996)." *United States* v. *$79,000 in Account Number 2168050/6749900*, Docket No. 96 Civ. 3493, 1996 U.S. Dist. LEXIS 16536, *3 (S.D.N.Y. November 7, 1996).

The court held that the plaintiff became the legal owner of the funds in the account once they were placed in his name and under his social security number, citing 9 C.J.S. § 281 (1996).[1] From the weight of the evidence and the long-standing precedents on gifts, the holding of the court was not clearly erroneous and could reasonably have been made.

## II

The defendant further claims that even if there was a valid gift, a valid, enforceable contract was never created between the parties, and the court's finding of a contractual relationship was unsupported by the evidence. The plaintiff argues that he was the legal owner of the account, and the bank became his debtor

---

[1] Section 281 of volume nine of Corpus Juris Secundum (1996) states in relevant part: "Ordinarily, where a deposit is made by one person in the name of another, the rights with respect to such deposit belong to the person in whose name the deposit is made, even though the latter is unaware of the deposit, and the bank may not dispute his or her title or rights."

for the amount deposited into the account. We agree with the plaintiff.

"The law regarding the creation of contract rights in third parties in Connecticut is . . . well settled. In *Knapp* v. *New Haven Road Construction Co.*, 150 Conn. 321, 325, 189 A.2d 386 (1963), [our Supreme Court] quoted *Colonial Discount Co.* v. *Avon Motors, Inc.*, 137 Conn. 196, 201, 75 A.2d 507 (1950), and reaffirmed that [t]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although we explained that it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary; *Knapp* v. *New Haven Road Construction Co.*, supra, 326; we emphasized that the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be, under our rule, because the parties to the contract so intended. Id." (Internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 580–81, 833 A.2d 908 (2003).

The court held that a contract existed due to the relationship between the broker and the owner of the account. The court further held that the defendant breached that contract when it transferred the funds to someone other than the plaintiff. Here, the plaintiff's father clearly created ownership rights in the plaintiff alone when the account was opened in the plaintiff's name using his social security number. On that basis, there is a clear intention that the rights of an owner would be created in the plaintiff and that he was the

intended beneficiary of the contract created with the defendant. The findings of the court are not clearly erroneous.

The judgment is affirmed.

In this opinion LAVINE, J., concurred.

McLACHLAN, J., dissenting. I respectfully disagree with the majority's conclusions that there was a valid inter vivos gift of the brokerage account at issue and that a contract existed between the defendant, Quick & Reilly, Inc., and the plaintiff, James Wasniewski. The plaintiff has failed to satisfy his burden of proof on these issues.

I

In my opinion, there was no gift because there was no valid delivery. Under long established Connecticut precedent, "[a] gift is the transfer of property without consideration. It requires two things: a *delivery* of the possession of the property to the donee, and an intent that the title thereto shall pass *immediately* to him." (Emphasis added.) *Guinan's Appeal from Probate*, 70 Conn. 342, 347, 39 A. 482 (1898); see also *Hartford-Connecticut Trust Co.* v. *Slater*, 114 Conn. 603, 613, 159 A. 578 (1932). "To make a valid gift inter vivos, the donor must *part with control* of the property which is the subject of the gift with an intent that title shall pass immediately and irrevocably to the donee. . . . The burden of proving the essential elements of a valid gift rests upon the party claiming the gift." (Citations omitted; emphasis added.) *Kriedel* v. *Krampitz*, 137 Conn. 532, 534, 79 A.2d 181 (1951). "To support a factual conclusion of an executed inter-vivos gift, there would have to be a donative intention and at least a constructive delivery. . . . For a constructive delivery, the donor must do that which, under the circumstances,

will in reason be equivalent to an actual delivery. It must be as nearly perfect and complete as the nature of the property and the circumstances will permit." (Citations omitted.) *Hebrew University Assn.* v. *Nye*, 148 Conn. 223, 232–33, 169 A.2d 641 (1961).

A

The majority concludes that there is a valid gift because once the funds were deposited in the account under the individual's name, the account holder is presumed to have control over the account. This argument loses sight of the real issue, which is, in my opinion, whether there was delivery of the account so as to satisfy the elements of an inter vivos gift.[1]

The plaintiff bears the burden of proving the essential elements of a valid gift because he is the party claiming the gift. See *Kriedel* v. *Krampitz*, supra, 137 Conn. 534. The trial court and the majority, however, conclude that there was a gift without discussing if there was a valid delivery or whether the plaintiff satisfied his burden of proving the elements of a gift. The facts show that there was no delivery, constructive or actual. In order for there to be constructive delivery, "[i]t must be as nearly perfect and complete as the nature of the

---

[1] The record, however sparse it may be, reflects that there was never any delivery of the account to the plaintiff. Although it is unclear what transpired when the father opened the bank account, because the records were destroyed, it is clear that the plaintiff knew nothing about the account during the entire time it was in existence. In the plaintiff's words, "I wasn't aware that the account existed until my father sent me that 1099 from Quick & Reilly in 2003." Moreover, the plaintiff confirmed that he received the 1099 tax form after the account was closed. The fact that the plaintiff did not know about the account until after it was closed demonstrates that there was no delivery. Moreover, the plaintiff's father previously had opened another account for his son, the plaintiff, with the investment firm, Tucker Anthony, and the plaintiff had full knowledge of that account. Because the plaintiff's father previously had opened another brokerage account for the plaintiff and the plaintiff had knowledge and control over that account, this indicates that the father understood how to deliver such a gift to his son and that he had no such intention with regard to this account.

property and the circumstances will permit." *Hebrew University Assn.* v. *Nye*, supra, 148 Conn. 232. Delivery could be easy to accomplish in the case of a brokerage account. The plaintiff merely would have to be notified of the existence of the account. Here, the plaintiff's father not only failed to give such notice, but took steps to prevent the plaintiff from finding out about the account. Thus, delivery was not complete or "nearly perfect" to support a tenable constructive delivery argument.

## B

Not only did the plaintiff fail to prove that there was constructive delivery, he did not prove actual delivery of the account. The donor's retention of control is inconsistent with delivery of a gift. Here, the plaintiff's father maintained all elements of control. He received all of the account statements and failed to notify the plaintiff, or anyone, that he had created the account for the benefit of the plaintiff. In fact, he maintained the ultimate indicia of control: he closed the account. These facts coupled with the fact that the plaintiff exercised absolutely no dominion or control over the account supports the conclusion that the plaintiff's father never relinquished control of the account. Because there was no actual delivery, the gift was not completed. See *Kriedel* v. *Krampitz*, supra, 137 Conn. 534.[2]

---

[2] The court never found delivery, a necessary element of a gift. See *Guinan's Appeal from Probate*, supra, 70 Conn. 342. In fact, when the defendant moved for articulation seeking clarification and articulation of the basis for which the court concluded that there was a valid gift, given the absence of any factual finding of delivery, the court stated: "Under the circumstances found here, it seems absurd to permit the very party who obstructed the delivery and acceptance by its conduct to be found to benefit by claiming the absence of delivery or acceptance." The plaintiff did not file a motion for review.

Instead of focusing on whether there was a valid delivery, the majority relies on *United States* v. *$79,000 in Account Number 2168050/6749900*, Docket No. 96 Civ. 3493, 1996 U.S. Dist. LEXIS 16536, at *3 (S.D.N.Y. November 7, 1996), for the principle that "[o]nce the funds are deposited in an account under an individual's name, the account holder is presumed to have

## C

A valid inter vivos gift requires two elements, delivery and intent that the "title thereto shall pass immediately . . . ." *Guinan's Appeal from Probate*, supra, 70 Conn. 347. "Where . . . the donor maintains some control over the money given, it is some evidence of an intent not to pass title immediately." *Kukanskis* v. *Jasut*, 169 Conn. 29, 35, 362 A.2d 898 (1975). Even if we assume arguendo that the plaintiff's father intended to make a gift at some time, it is far from clear whether he intended to make an immediate gift of the account to the plaintiff. Moreover, as discussed previously, the plaintiff's father retained control over the account, evidencing that he did not intend for the gift to pass immediately.

In 1885, our Supreme Court addressed the issue of intent to make an inter vivos gift of two bank accounts. The court wrote that "[t]he fact that a part of the deposits were made in the plaintiff's name affords the strongest evidence of an intention to make a gift; but that does not necessarily show an intention to make a present gift; it is equally consistent with an intention to have the gift take effect at some future time." *Burton* v. *Bridgeport Savings Bank*, 52 Conn. 398, 402 (1885). Thus, just because the father established the account in the name of the plaintiff does not mean as a matter of law that he intended a present gift.

## II

I also respectfully disagree with the majority's conclusion that a contract existed between the plaintiff and

title to and control over those funds." That case, however, is distinguishable from this case. In the former case, the claimants deposited money into a preexisting account in order to transfer money out of the United States. Here, the account was not in existence; rather, it was created by the plaintiff's father when he opened it with his funds. The claimants in the federal case, however, were aware of the existence of the account at issue. Thus, just because the account was in the plaintiff's name does not automatically mean that he controlled the account or that there was a valid delivery of the account.

the defendant. The court did not explain how a contract was formed but simply concluded that "[t]he plaintiff was entitled to the interest and the principal from the contract implicit in the relationship between a broker and the owner of an account with the broker." In the first place, this conclusion begs the question of who was the owner of the account. Second, the court's analysis is inconsistent with the fundamental principles of contract formation.

"The rules governing contract formation are well settled. To form a valid binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . . If the minds of the parties have not truly met, no enforceable contract exists. . . . [A]n agreement must be definite and certain as to its terms and requirements. . . . So long as any essential matters are left open for further consideration, the contract is not complete." (Internal quotation marks omitted.) *Duplissie* v. *Devino*, 96 Conn. App. 673, 688, 902 A.2d 30, cert. denied, 280 Conn. 916, 908 A.2d 536 (2006). "It is true . . . that in order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties . . . ." (Internal quotation marks omitted.) *BRJM, LLC* v. *Output Systems, Inc.*, 100 Conn. App. 143, 152, 917 A.2d 605, cert. denied, 282 Conn. 917, 925 A.2d 1099 (2007).

In this case, the plaintiff never entered into a contract with the defendant. In fact, he testified, when asked if he had ever entered into any agreement with the defendant to create the account, "[n]o, I did not." There was no meeting of the minds because the plaintiff's father opened the brokerage account. Although it is

unclear what representations the plaintiff's father made to the defendant when opening the account, what is clear is that the son never entered into a contract with the defendant because, as he testified, he did not have an agreement with it.

The majority concludes that the court's finding that a contract was formed was not clearly erroneous because the plaintiff was a third party beneficiary. This finding is inconsistent with the law of third party beneficiaries. The plaintiff does not satisfy the test for a third party beneficiary because there is no evidence that the plaintiff's father and the defendant intended to create a third party beneficiary contract. "[T]he ultimate test to be applied [in determining whether a person has the right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to pay the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties." (Internal quotation marks omitted.) *Knapp* v. *New Haven Road Construction Co.*, 150 Conn. 321, 325, 189 A. 2d 386 (1963). The plaintiff had the burden to prove that he was a third party beneficiary. He presented no evidence that the plaintiff's father and the defendant intended that he be a third party beneficiary. We cannot ascertain the intentions of the parties. It is unclear whether the defendant knew that the account was being opened for the plaintiff. It is unclear what the plaintiff's father told the defendant when he opened the account. Without this crucial information, it is unreasonable to conclude that the plaintiff was an intended third party beneficiary. It is possible that the defendant thought that the plaintiff's father was actually the plaintiff because he did have all of the information concerning the account mailed directly to him. He may have misrepresented

himself to the defendant. We have no basis to know the intention of the parties. Thus, with all these questions left unanswered, it is clear that the plaintiff did not satisfy his burden of proof.

Accordingly, I respectfully dissent and would reverse the judgment of the trial court.