JAMES W. WASNIEWSKI *v.* QUICK AND REILLY, INC.
(SC 18160)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

---

Argued January 14—officially released June 9, 2009

*Thomas J. Sansone*, for the appellant (defendant).

*Frank J. Liberty*, for the appellee (plaintiff).

ROGERS, C. J. The defendant, Quick and Reilly, Inc., appeals from the judgment of the Appellate Court affirming the judgment of the trial court in favor of the plaintiff, James W. Wasniewski. The plaintiff initiated this breach of contract action to recover funds that his father had deposited without the plaintiff's knowledge in an account bearing the plaintiff's name at the defendant brokerage firm. The certified issues in this appeal are: (1) whether "the Appellate Court [majority] properly conclude[d] that valid delivery of an inter vivos gift was effected by the plaintiff's father to the plaintiff"; and (2) whether "the Appellate Court [majority] properly determine[d] that the plaintiff was the intended third party beneficiary of [an] alleged contract entered into between the plaintiff's father and the defendant . . . ." *Wasniewski* v. *Quick & Reilly, Inc.*, 287 Conn. 913, 914, 950 A.2d 1289 (2008). We answer both of the certified questions in the negative and, accordingly, reverse the judgment of the Appellate Court.

The relevant facts, as found by the trial court, are set forth in the majority opinion of the Appellate Court. "The plaintiff's father, John Wasniewski, opened a brokerage account with the defendant on November 14, 1989, in the plaintiff's name and social security number. The account was funded with the proceeds of $30,000 worth of bonds issued by the Connecticut housing finance authority. The account earned $2115 per year in interest. The total value of the account, including accrued interest, was found to be $52,085. The account

was closed on January 5, 2001, when the funds were withdrawn by someone other than the plaintiff and transferred to a joint account in the name of the plaintiff's father and the plaintiff's brother. The plaintiff was unaware of the account during the entire period that it was in existence. The plaintiff became aware of the account when his father mailed him a tax form 1099 for the 2001 calendar year. All statements for the brokerage account had been sent to the address of the plaintiff's father.

"The plaintiff commenced a civil action against the defendant by complaint filed August 18, 2004. The plaintiff set out four causes of action, three of which were dismissed by the court after hearing argument on the defendant's motion for summary judgment filed September 2, 2005. The plaintiff's breach of contract claim was the only claim remaining before the court. In a memorandum of decision filed June 27, 2006, the court, *Hon. Robert C. Leuba*, judge trial referee, [found] that the account was owned by the plaintiff from the time it was created and that he was entitled to the interest and the principal pursuant to the contract implicit in the relationship between a broker and the owner of an account with that broker. The court further [found] that the defendant breached this contract when it transferred the funds to someone other than the plaintiff. The plaintiff was awarded $52,085 plus costs.

"The defendant filed a motion for reargument on July 11, 2006, which was denied by the court. The defendant filed its appeal [to the Appellate Court on] September 21, 2006. The defendant then filed a motion for articulation on September 29, 2006, which was granted. The court filed its articulation on October 26, 2006." *Wasniewski* v. *Quick & Reilly, Inc.*, 105 Conn. App. 379, 380–81, 940 A.2d 811 (2008).

The Appellate Court majority concluded that the trial court's findings were not clearly erroneous. Citing § 281

of volume 9 of Corpus Juris Secundum (1996),[1] and *United States* v. *$79,000 in Account Number 2168050/ 674990*, Docket No. 96 Civ. 3493, 1996 U.S. Dist. LEXIS 16536, *3 (S.D.N.Y. November 7, 1996), the Appellate Court majority concluded that the weight of evidence supported the trial court's finding that once the funds were placed in the brokerage account in the plaintiff's name and under his social security number, the plaintiff obtained title and control over those funds. *Wasniewski* v. *Quick & Reilly, Inc.*, supra, 105 Conn. App. 383. The majority further found no error in the trial court's finding that the defendant had breached its contractual obligations to the plaintiff. Id., 384–85.

In his dissent, Judge McLachlan concluded that the trial court improperly had found that the plaintiff held title to the funds in the brokerage account because the record contained no evidence that the funds were delivered, actually or constructively, to the plaintiff. Id., 386–88. The dissent concluded that, in the absence of such evidence, the trial court could not find a valid inter vivos gift of the funds from the plaintiff's father to the plaintiff. Id. The dissent further concluded that the evidence did not support the trial court's conclusion that the plaintiff held a contractual right to receive the funds in the brokerage account. Id., 388–91. We granted the defendant's petition for certification to appeal from the judgment of the Appellate Court. We address each of the certified issues in turn.

I

The first certified issue is whether the Appellate Court properly concluded that there was sufficient evi-

---

[1] "Ordinarily, where a deposit is made by one person in the name of another, the rights with respect to such deposit belong to the person in whose name the deposit is made, even though the latter is unaware of the deposit, and the bank may not dispute his or her title rights." 9 C.J.S. 271, Banks and Banking § 281 (1996).

dence for the trial court to find that the plaintiff's father had effected a valid inter vivos gift of the funds in the brokerage account to the plaintiff. Specifically, we must decide whether the trial court properly found that the plaintiff's father had executed a delivery of the funds, a requisite element of a valid inter vivos gift. We conclude that the Appellate Court improperly determined that the trial court's finding was not clearly erroneous.

We begin by setting forth the appropriate standard for our review of the first certified issue. We give great deference to the trial court's factual determination of whether a gift has been made and will uphold the court's finding unless it is clearly erroneous. *Dalia* v. *Lawrence*, 226 Conn. 51, 71, 627 A.2d 392 (1993); see also *Kriedel* v. *Krampitz*, 137 Conn. 532, 534, 79 A.2d 181 (1951). "[A] finding [of fact] is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *National Grange Mutual Ins. Co.* v. *Santaniello*, 290 Conn. 81, 90, 961 A.2d 387 (2009); *Dalia* v. *Lawrence*, supra, 71. "The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact. . . . This court does not try issues of fact or pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *Dalia* v. *Lawrence*, supra, 71; see also *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 65, 931 A.2d 237 (2007). Even under this deferential standard, we conclude that the findings of the trial court must yield.

"A gift is the transfer of property without consideration. . . . To make a valid gift inter vivos, the donor must part with control of the property which is the subject of the gift with an intent that title shall pass immediately and irrevocably to the donee." (Citation

omitted; internal quotation marks omitted.) *Kriedel* v. *Krampitz*, supra, 137 Conn. 534; *Parley* v. *Parley*, 72 Conn. App. 742, 749, 807 A.2d 982 (2002); see also *Burbank* v. *Stevens*, 104 Conn. 17, 22, 131 A. 742 (1926). In other words, a valid inter vivos gift of personal property requires both delivery of possession of the property to the donee and an intent on the part of the donor that title shall pass immediately to the donee. *Bergen* v. *Bergen*, 177 Conn. 53, 56–57, 411 A.2d 22 (1979); *Kukanskis* v. *Jasut*, 169 Conn. 29, 34, 362 A.2d 898 (1975); *Hartford-Connecticut Trust Co.* v. *Slater*, 114 Conn. 603, 613, 159 A. 578 (1932); *Main's Appeal from Probate*, 73 Conn. 638, 640, 48 A. 965 (1901); *Guinan's Appeal from Probate*, 70 Conn. 342, 347, 39 A. 482 (1898); *Fontaine* v. *Colt's Mfg. Co.*, 74 Conn. App. 730, 733, 814 A.2d 433 (2003). The burden of proving intent and delivery rests upon the party claiming the gift. *Bergen* v. *Bergen*, supra, 56; *Kriedel* v. *Krampitz*, supra, 534; *Parley* v. *Parley*, supra, 749.

"Delivery of possession is the foundation of a transfer; without delivery there can be no transfer." *City National Bank* v. *Morrissey*, 97 Conn. 480, 483, 117 A. 493 (1922). In order to constitute a delivery, not only must the donor part with possession of the property, but he also must relinquish control of it. See *Kriedel* v. *Krampitz*, supra, 137 Conn. 534; *Burbank* v. *Stevens*, supra, 104 Conn. 22 (delivery to third person sufficient if donor parts with control, reserves no right to recall and intends thereby final disposition of property); *Candee* v. *Connecticut Savings Bank*, 81 Conn. 372, 375, 71 A. 551 (1908); *Parley* v. *Parley*, supra, 72 Conn. App. 749; see also *Costello* v. *Costello*, 136 Conn. 611, 615, 73 A.2d 333 (1950) (to constitute delivery of deed grantor must part with legal possession of deed and with all right to retain it; present and future dominion over deed must pass from grantor); *Grilley* v. *Atkins*, 78 Conn. 380, 386–87, 62 A. 337 (1905) (same). Delivery

may be actual or constructive, but does not require that the donor effect delivery in any particular form or mode. See *Hebrew University Assn.* v. *Nye*, 148 Conn. 223, 232, 169 A.2d 641 (1961); *Fontaine* v. *Colt's Mfg. Co.*, supra, 74 Conn. App. 733.

In the present case, the parties agree that the plaintiff never received actual delivery of the funds in the brokerage account. Indeed, he was unaware of the existence of those funds until after they had been withdrawn from the account. The defendant claims that there also was insufficient evidence of constructive delivery of the funds notwithstanding the fact that the plaintiff's father placed the funds in the brokerage account at the time the account had been created in the plaintiff's name using the plaintiff's social security number.[2] We agree.

"For a constructive delivery, the donor must do that which, under the circumstances, will in reason be equivalent to an actual delivery. It must be as nearly perfect and complete as the nature of the property and the circumstances will permit." *Hebrew University Assn.* v. *Nye*, supra, 148 Conn. 232–33. For example, "[t]he gift may be perfected when the donor places in the hands of the donee the means of obtaining possession of the contemplated gift, accompanied with acts and declarations clearly showing an intention to give and

---

[2] The plaintiff argues that the existence of the brokerage account under his name and social security number establishes, as a matter of law, his title to the funds in that account. As we understand it, the plaintiff's argument is that, as a matter of law, his father completed a transfer of title to the funds by placing those funds in the possession of the defendant, who thereafter affixed the plaintiff's name and social security number to those funds. He further claims that the defendant never has disputed the existence or applicability of that legal proposition and that the defendant cannot defeat his title to the funds by now claiming a failure of delivery. We disagree. Our review of the record reveals that, from the initiation of this action, the defendant has taken the position that the placement of the funds in the brokerage account was insufficient to effect a transfer of title to those funds from the plaintiff's father to the plaintiff.

to divest himself of all dominion over the property." *Candee* v. *Connecticut Savings Bank*, supra, 81 Conn. 375; see also *DeNunzio* v. *DeNunzio*, 90 Conn. 342, 347, 97 A. 323 (1916) (delivery of certificate of stock, which is muniment of title, completes constructive delivery of stock itself). Thus, the question we must resolve is whether the placement of the funds in the brokerage account in the plaintiff's name using the plaintiff's social security number was the equivalent of an actual delivery of the funds to the plaintiff. We conclude that it was not.

In *Meriden Trust & Safe Deposit Co.* v. *Miller*, 88 Conn. 157, 163, 90 A. 228 (1914), this court stated: "The deposits of moneys in a savings-bank by a donor who retains possession of the bank-book in the name of a donee, with the intention of making a present gift thereof, *and with notice to the donee of such gift and an acceptance of the same*, constitutes, in law, an accepted gift. Upon his acceptance, the donee's title to the deposit is absolute. All title and right of possession have passed from the donor to the donee. *Kerrigan* v. *Rautigan*, 43 Conn. [17, 23 (1875)]; *Buckingham's Appeal* [*from Probate*], 60 Conn. 143, 22 [A.] 509 [1891]; *Main's Appeal* [*from Probate*, supra, 73 Conn. 642–44]; *Candee* v. *Connecticut Savings Bank*, [supra, 81 Conn. 375].

"There are various ways in which such gifts have been made, and they have been upheld by us. In each we found present . . . the requisites of a valid gift inter vivos, delivery of possession to the donee, and intent to pass title with the possession, immediately. In each case the beneficial interest was given. In each the gift was irrevocable. The delivery may be actual, or . . . constructive, manifested by the opening of the accounts, *the notice to the donees, their acceptance and acts of dominion over the fund.*" (Emphasis added.)

The important distinction between the present case and *Miller* and its ancestry is the lack of notice to

the plaintiff that his father had deposited funds in an account established in the plaintiff's name. Although the use of the plaintiff's name and social security number may be sufficient indicia of a donative intent; see *Main's Appeal from Probate*, supra, 73 Conn. 641; those facts, standing alone, failed to establish that the plaintiff's father had relinquished control of the funds, thereby completing their delivery to the plaintiff.[3] See *Meriden Trust & Safe Deposit Co.* v. *Miller*, supra, 88 Conn. 163, and cases cited therein. Under these circumstances, additional action, such as notice to the plaintiff of the account's existence, was necessary to effectuate a delivery "as nearly perfect and complete as the nature of the property and the circumstances will permit." *Hebrew University Assn.* v. *Nye*, supra, 148 Conn. 232–33. In the absence of such additional evidence that the plaintiff's father had taken action to divest himself of control of the account, the trier of fact reasonably could not have found a constructive delivery of the funds. The evidence, however, overwhelmingly established that the plaintiff's father retained absolute control of the funds placed in the brokerage account until those funds eventually were withdrawn.

[3] Accordingly, we disagree with the Appellate Court majority's reliance on *United States* v. *$79,000 in Account Number 2168050/674990*, supra, 1996 U.S. Dist. LEXIS *3, for the proposition that the plaintiff in this case is presumed to have title and control over the funds. In *$79,000 in Account Number 2168050/674990*, the United States District Court for the Southern District of New York concluded that the plaintiffs lacked standing to claim title to funds seized by the government from an account held in the name of a third party because the plaintiffs had failed to allege any fact, such as signatory authority, to support a finding that they maintained dominion or control over the account and the disposition of the funds therein. Id., *10. Thus, aside from the fact that it is not binding authority on this court, *$79,000 in Account Number 2168050/674990* actually supports the defendant's argument in the present case that, in determining the ownership of the funds placed in the brokerage account, the critical issue is not the name or other label associated with that account, but who maintains control over those funds. See *Kukanskis* v. *Jasut*, supra, 169 Conn. 35 (where donor maintains some control over money given it is some evidence of intent not to pass title immediately).

In the present case, the trial court found that the plaintiff was unable to exercise control over the brokerage account because the defendant intentionally had concealed the existence of the account from him by forwarding account statements to the plaintiff's father and not to the plaintiff. The court concluded, therefore, that it would be "absurd to permit the very party who obstructed the delivery and acceptance by its conduct to be found to benefit by claiming the absence of delivery or acceptance." (Internal quotation marks omitted.) *Wasniewski* v. *Quick & Reilly, Inc.*, supra, 105 Conn. App. 387 n.2. The court's conclusion necessarily presupposes the fact that the plaintiff's father had instructed the defendant to notify the plaintiff of the existence of the brokerage account in order to perfect the delivery of the gift. It is true that a donor may make a gift of personal property "if the subject of the gift be delivered to a third person *with instruction* to deliver it to the donee . . . and if the donor parts with all control over it, reserves no right to recall, and intends thereby a final disposition of the property given." (Emphasis added; internal quotation marks omitted.) *Burbank* v. *Stevens*, supra, 104 Conn. 22; see also *City National Bank* v. *Morrissey*, supra, 97 Conn. 482–84 (decedent failed to deliver signed notes and deeds to claimed donees where those instruments were placed in custody of decedent's attorney for safekeeping without further instruction from decedent); *Minor* v. *Rogers*, 40 Conn. 512, 518–20 (1873) (where bank is informed that deposit is made for benefit of third party, delivery of beneficial interest in funds is complete; depositor's control of funds thereafter solely for benefit of third party). The record, however, is devoid of any evidence that the plaintiff's father had made such a request. In the absence of any evidence of such a request by the plaintiff's father, the only logical conclusion is that the plaintiff's father, in fact, retained control of the account and the funds deposited therein.

We conclude therefore that the Appellate Court improperly determined that the trial court's finding to the contrary was not clearly erroneous. See *Hebrew University Assn.* v. *Nye,* supra, 148 Conn. 228 ("[c]ourts do not supply conveyances where there are none").

## II

We turn next to the second certified issue, namely, whether "the Appellate Court [majority] properly determine[d] that the plaintiff was the intended third party beneficiary of [an] alleged contract entered into between the plaintiff's father and the defendant . . . ." *Wasniewski* v. *Quick & Reilly, Inc.,* supra, 287 Conn. 914. We conclude that it did not.

"The law regarding the creation of contract rights in third parties in Connecticut is . . . well settled. . . . [T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although we explained that it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary . . . we emphasized that the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be, under our rule, because the parties to the contract so intended. . . .

"The requirement that both contracting parties must intend to confer enforceable rights in a third party rests, in part at least, on the policy of certainty in enforcing contracts. That is, each party to a contract is entitled to know the scope of his or her obligations thereunder.

That necessarily includes the range of potential third persons who may enforce the terms of the contract. Rooting the range of potential third parties in the intention of both parties, rather than in the intent of just one of the parties, is a sensible way of minimizing the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could be held to know, would ultimately be his contract obligee." (Citations omitted; internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 580–81, 833 A.2d 908 (2003).

In the present case, the plaintiff's father transferred possession of a sum of money to the defendant, who held those funds for a period of time in an account under the name of the plaintiff. The plaintiff argues that those facts alone are sufficient proof that both the defendant and the plaintiff's father intended to form a contract of which the plaintiff was a third party beneficiary. The plaintiff's argument fails, however, for the same reason as his claim that his father constructively had delivered a gift. The record is devoid of evidence that the plaintiff's father had sought a promise from the defendant to transfer possession of the funds to the plaintiff. Without evidence of such a promise by the defendant, there is no basis on which the finder of fact could conclude that the defendant, either expressly or implicitly, assumed a direct obligation to deliver those funds to the plaintiff. Accordingly, the Appellate Court improperly affirmed the judgment of the trial court on the ground that the defendant had breached a contract with the plaintiff's father, of which the plaintiff was an intended third party beneficiary.[4]

---

[4] In addition to lacking evidentiary support, the theory that the defendant breached a contract with the plaintiff's *father* was neither raised by the plaintiff nor adjudicated by the trial court. The plaintiff's complaint claims only that the defendant breached its contract with the plaintiff. Further, the trial court concluded that the defendant had breached a contract with the plaintiff, finding the existence of that contract "implicit in the relationship between a broker and the owner of an account with that broker." *Wasniew-*

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court with direction to render judgment for the defendant and to modify the order of costs accordingly.

In this opinion the other justices concurred.

*ski* v. *Quick & Reilly, Inc.*, supra, 105 Conn. App. 381. Under the circumstances in this case, the distinction is not relevant because we conclude that, under either theory, the plaintiff failed to present sufficient evidence that the defendant had assumed an obligation to transfer possession of the funds to the plaintiff.